CALIFORNIA DRY-DOCK Co. *v.* ARMSTRONG and others.

*(Circuit Court, D. California.* February 12, 1883.)

1. GENERAL RULE OF DAMAGES.
   The general rule is that no damages can be recovered until they shall have actually accrued; and that an action cannot be maintained on a mere liability to a third party to which a plaintiff has been subjected by the act of the defendant. The plaintiff, in such a case, must allege and prove that he has incurred actual damage, by showing the payment or other satisfaction of such liability.

2. LIABILITY OF STRANGER COMMITTING WASTE.
   A stranger committing waste upon premises leased, or held by a particular estate, is liable to the tenant for the injury to the possession, and to the landlord, or reversioner, for the injury to the freehold or inheritance. The right of each is distinct from that of the other, and satisfaction made to the one is no bar to an action brought by the other.

3. LIABILITY OF TENANT FOR WASTE, AND HIS RIGHTS AGAINST TRESPASSER.
   The tenant is answerable to the landlord, or reversioner, for waste done by a stranger. He has his remedy over against the stranger, but the tenant's recovery against the stranger for injuries to the freehold, or reversion, is dependent on his first having satisfied the landlord's claim by payment, or repair of the injured premises; and, in such case, the stranger is liable only for the payment, or expense necessarily incurred.
   *Wood* v. *Griffin,* 46 N. H. 231, approved and followed.

4. EFFECT OF EXPRESS UPON IMPLIED COVENANTS IN A LEASE.

Where the parties to a lease of real property have expressly covenanted to repair, it seems that the express covenant takes the place of the implied covenant, and becomes the measure of the tenant's liability.

5. RIGHT OF TENANT AGAINST TRESPASSER WHERE TENANT HAS COVENANTED TO REPAIR.

It being admitted that in a case in which the tenant has expressly covenanted to repair, such tenant has a right to maintain an action against a stranger committing waste, for injuries done to the freehold, *held*, that such right of action does not accrue in favor of a tenant until he has paid or satisfied his landlord, or repaired the premises.

6. COMPLAINT FAILING TO STATE SATISFACTION OR REPAIRS MADE, IS DEMURRABLE.

A complaint setting forth the fact of a lease containing a covenant by the tenant to repair, and an injury to the freehold by a trespasser, (defendant in the action,) and further alleging that, by reason of the tortious act of the trespasser, the tenant (plaintiff in the action) has become, and is, absolutely liable and indebted to the landlord for the damages resulting from the trespass, viz., the necessary cost of repair, but which fails to aver that the landlord's claim has been satisfied, or that any expenditures in repair have been made by the tenant, does not state facts sufficient to constitute a cause of action.

At Law.

*Wallace, Greathouse & Blanding,* for plaintiff.

*Andros & Page,* for defendant.

SAWYER, J.   The plaintiff alleges in the first count that it was the lessee for a term of years of certain real estate, partly covered with water, upon which there was situated a marine railway, extending into the water; that during the term of said lease, and while the plaintiff was in the possession of the premises under the lease, the ship Alneburgh, of which the defendants were, at the time, owners, negligently ran upon, and came into collision with, said marine railway, and broke down and destroyed it; that by the terms of said lease "it was expressly covenanted and agreed by and between plaintiff, as lessee, and the lessors," that plaintiff would, at the expiration of the term of said lease, to-wit, on the tenth day of November, 1880, quit and surrender said premises, and every portion thereof, to the said lessors in as good state and condition as reasonable use and wear thereof would permit, (damages by the elements excepted,) and that plaintiff, under and by virtue of said agreement and covenant contained in said lease, became and was, on said ninth day of November, 1879, and ever since, continuously, has been, and now is, absolutely liable and indebted to the said lessors for the whole value of said marine railway so constructed upon said premises at the commencement of said lease, and for the whole amount of the damages resulting from the breaking down and the destruction of the same, as aforesaid, being the necessary cost and expenses of putting the said marine railway in as good state and condition, as it was in on the said thirteenth day of November, 1875, reasonable use and wear thereof excepted; that the necessary cost of putting said marine railway in such repair as is required by the plaintiff's said covenant

would be $12,000, and that plaintiff has thereby been damaged and injured to said amount, for which sum judgment is asked.

There is another count for injuries to the plaintiff's possession, not embracing the damages to the inheritance. Defendant demurs to the first count on the ground that it does not appear that plaintiff has made the repairs, or made satisfaction to the lessors under his covenant for the damages to the freehold; that a mere liability to repair, without first satisfying the liability, gives no ground of action for an injury to the reversionary estate of the lessors; that he is not injured, and sustains no real damages till he actually repairs, or makes satisfaction; that as he may never perform this covenant, the injury and damages may never arise, and that there is no right of action till actual damage and injury arise. There are two estates injured here: the temporary estate of the lessee, continuing during his term, and the permanent estate of the lessors, the inheritance,— an injury to the possession and an injury to the land itself; and the owner of each estate has his action against the stranger who commits the wrong or waste, each for the particular injury done to his particular estate. Under the common law the action for the injury done to the lessee's estate would have been trespass, and that to the lessor's, case. 2 Washb. Real Prop. 393; Tayl. Landl. & Ten. § 173; *Starr* v. *Jackson*, 11 Mass. 521.

CHAMBER, J., in *Attersoll* v. *Stevens*, 1 Taunt. 194, says:

"Where different persons have distinct rights in the subject of a trespass, the compensation must be to each in proportion to the injury received. One of them cannot claim that part of the compensation which belongs to the other; *nor can the satisfaction made to one be a bar to an action brought by the other.* It can hardly be necessary to cite cases on this point."

If the tenant is entitled to recover for injury to the estate of the reversioner, it is on the ground of his liability to the landlord to repair. It is admitted that the tenant is entitled to recover in such case, when he is under obligation to repair, provided he has in fact repaired, or made satisfaction to the landlord; and the question now is, whether, although liable, he can recover before he has repaired, or made satisfaction. Strange as it may seem, counsel have been able to find but one case in which this exact point has arisen and been decided, and that is *Wood* v. *Griffin*, 46 N. H. 231. This case bears abundant evidence of having been most thoroughly and carefully considered, and the reasoning appears to me to be unanswerable. It presented the precise question which was fully considered and determined, and the judgment was reversed on that point alone. The action was trespass, brought by the tenant for life for waste committed by felling and carrying away timber trees. I cannot do better than quote some passages from the decision. Says the court:

"The question is whether the plaintiffs are entitled to include in their damages the full value of the wood and timber, upon the ground that they

are liable over to the remainder-men or reversioner; or whether they are limited to damages for the injury to their possessory interest.

"There can be no controversy that the cutting of the wood and timber, by a tenant for life, or a stranger, for the purposes indicated in the case, is waste, (*Miles* v. *Miles*, 32 N. H. 147; *Dennett* v. *Dennett*, 43 N. H. 499;) and it seems to be equally clear that the tenants are liable to the person having the immediate remainder or reversion for such waste, whether committed by themselves or a stranger, or by a part of such tenants only. 4 Kent. Comm. *77, 85; *Cook* v. *Champlain Transp. Co.* 1 Denio, 104; *Attersoll* v. *Stevens*, 1 Taunt. 200; Com. Dig. 517, tit. 'Waste,' c. 4; Cruise, Dig. tit. 18, c. 1, §§ 63, 20, 54; Washb. Real Prop. 116. * * *

"It may also be considered as established, that, while the tenant is answerable to the remainder-man, or reversioner, for waste done by a stranger, such stranger is liable over to the tenant. 4 Kent, Comm. *77, 85; 2 Saund. 259, and cases cited.

"The precise question, then, is whether, in an action of trespass *quare clausum fregit* by the tenant against a stranger, he can recover damages for the injury to his possession, and also for the injury to the inheritance, without there having been any recovery against him by the remainder-man, or reversioner, or any satisfaction made by him in any form. * * *

"It is clear, from the adjudged cases, that the claims of the tenant and reversioner can be separated; that they are in fact distinct, and that each may maintain a suit for the injury done to him; and that both may be pending at the same time. How, then, can the tenant include in his damages the injury to the reversion? If he can in any case, how is the defendant to avail himself of the fact that another action is pending by him in remainder or reversion?

"Again, there is no necessity for arming the tenant with such power. If he is entitled to recover for the injury to the inheritance, whether he has satisfied the reversioner or not, his recovery must be a bar to a suit by the landlord; and still the trespasser might avail himself, by way of defense, of a license, or admission by the tenant, which might, in effect, defeat the landlord's claim against such trespasser; and besides, the landlord might find his claim against the trespasser defeated by the result of a suit prosecuted without his assent, in a manner opposed to his wishes, or by his *inability to obtain from the tenant himself the fruits of the suit against such third person.*

"The fact that the tenant is answerable for the injury does not, we think, furnish an adequate reason for sanctioning such doctrines. Where waste is committed by cutting down timber trees by a stranger, the property in them at once passes to the landlord, and he may take them, or maintain trover for them; and there surely can be no propriety in holding that the tenant also could have the same remedy, *for he has no property whatever in them.*

"*If the tenant has been compelled to satisfy the landlord for the injury by a third person, he may have his remedy over; but, until then, we think he must be confined to damages for the injury to the possession.*"

After distinguishing cases of personal property in the hands of others than the owner, the court says:

"But beyond this, *the authorities,* so far as we have any, *are opposed to the claim of the tenant to recover damages for an injury to the inheritance, until he has first satisfied the landlord;* and there is nothing in the state of the law in respect to suits by agents, carriers, and others in possession of goods, that would induce us to extend it to a case like the present. We think, therefore, that *on this ground the verdict must be set aside, unless* plaintiff will reduce the amount of the verdict to nominal damages."

In my judgment, also, the tenant cannot recover before repairing, or satisfying the landlord, for the reason that, till then, his cause of action on this ground has not matured. He has sustained no injury till he has done something by way of repairs, or towards satisfying the landlord for the injury to the inheritance. He may never do either, and he certainly ought not to recover unless he does one or the other. A recovery by an irresponsible tenant may wholly defeat the remedy of the landlord. The tenant ought not to recover any more than he pays in satisfaction, or necessarily expends in repairs; and if he has in fact repaired, or made satisfaction, he cannot recover more. Should he be unnecessarily extravagant in either, he might recover less. He may compromise at one-half or one-fourth the amount claimed. The extent of the liability should, in some mode, be fixed before he is permitted to maintain a suit. Generally, in the law relating to other matters, where a cause of action arises out of a liability incurred by reason of one's relation to another, the action cannot be maintained until payment, or satisfaction, of the liability; and I can perceive no good reasons for making a distinction in favor of the tenant in a case of this kind.

Thus, in *Willson* v. *McEvoy*, 25 Cal. 169, it was held, in an action for the breach of an injunction bond, that an attorney's fee, for which plaintiff became liable in resisting the injunction, could not be recovered without having been first paid by the plaintiff. The court observes: "The rule of the common law was, that on a bond to indemnify against the damage the obligee might sustain, he could recover only upon evidence that he had sustained actual damage; that compensation would only be awarded for actual loss. Evidence showing that he was subject to a liability, without showing payment, was not enough;" citing several authorities. This was affirmed in *Prader* v. *Grimm*, 28 Cal. 11, and extended to the expenses of procuring testimony. Also affirmed in subsequent cases. So, without actual payment of the debt, although the liability of the surety has attached, he cannot recover against the principal. *Hayes* v. *Josephi*, 26 Cal. 543. So, also, where an indemnity bond is given to a sheriff to save him harmless from any damages resulting from any trespass he may commit in executing a writ of replevin or attachment, he cannot recover on the bond, notwithstanding the fact that his liability has been *established by a judgment against him*, recovered for the damages resulting from the trespass, unless he has also in fact paid the judgment so recovered. *Lott* v. *Mitchell*, 32 Cal. 24. In this case the condition of the bond was very broad and should authorize a recovery, if any covenant could do so, short of providing in express terms that a recovery may be had upon incurring the liability before satisfaction. The condition is as follows: That the obligors "should well and truly keep and bear harmless and indemnify the said W. O. Middleton, sheriff, as aforesaid, of and from any and all damages, costs, suits, judgments, and executions, that shall or may at any time arise, come,

or be brought against him by reason of the detention of said property, or the delivery thereof to the plaintiff."

The same was held on an indemnity to the sheriff upon the levy of an attachment in *Roussin* v. *Stewart*, 33 Cal. 211, 212. In *De Costa* v. *Mass. Min. Co.* 17 Cal. 616, it was held that "the plaintiff could not recover beyond the injury sustained, and it *was improper to award compensation for an expense which might never be incurred.*" This was an action for a nuisance, in digging a ditch on plaintiff's land, and the estimated cost of filling the ditch had been allowed as damages. So, in *Burt* v. *Dewey*, 40 N. Y. 285, it was held that a liability established by a *judgment against a party cannot afford a ground of action until paid*, as it may never be enforced. The liability sued on in this case rests on the express covenant to repair set out in the complaint, and not upon the common-law liability to repair, and the injury done by the negligence of the defendant. As there is an express covenant, I suppose that it is the measure of the liability, the parties having fixed the extent of the obligation on this point by the terms of the contract. At all events, that is the liability alleged in the complaint. So, also, in the several cases cited upon covenants in bonds, the injuries provided against in some of them are trespasses. Yet in *Roussin* v. *Stewart*, 33 Cal. 212, the court says: "There is nothing in the point that the indemnity is against a trespass." And the same is held in *Stark* v. *Raney*, 18 Cal. 622, where the trespass is not malicious. I see no good reason why these authorities, and numerous others of a similar character, should not be applicable to this case, as to when the right to recover damages attaches.

Whether the liability in this case to repair rests upon the express covenant set out upon implied covenants, or upon principles of public policy, which hold the tenant responsible for a violation of duty to his landlord in failing to protect the freehold, while in his possession as tenant, in my judgment, both upon reason and authority, no recovery can be had until the tenant has made repairs, or made satisfaction to the landlord. It is argued that if this rule be adopted, then the tenant may never be able to recover, as he may not be able to agree with his landlord as to the amount to be paid, and he may not be able, for want of means, either to repair or make satisfaction. If this be so, his damages will never accrue, and he certainly ought not to recover. That is the very question presented. Clearly, the general rule in all matters is that damages cannot be recovered until they have actually accrued, and I can find no possible good ground for applying a different rule to cases of this kind.

It only remains to notice the authorities relied on by the plaintiff, apparently with great confidence. No one of them either presents or decides the exact point. In those relating to real estate, whatever is said bearing upon the precise point is *obiter*, thrown out in the course of the argument by the judge without being called for by the case as presented in the report. The observations in each case are

general remarks, which, considered with reference to the facts before the court, are not inconsistent with the views already expressed, but are mere statements of the general rule as to the liability to the tenant. The first and apparently the strongest case is *Cook* v. *Champlain Transp. Co.* 1 Denio, 92. In this case the question whether the tenant was entitled to recover upon his liability to repair *without* first repairing, or making satisfaction to his landlord, was not *raised by counsel, or discussed or even alluded to by the court.* It does not appear whether the tenant had repaired or not. He may have done so, or have made satisfaction,—probably had repaired; and as there was no question on that point, it was unnecessary to incumber the record by stating facts not necessary to illustrate the points actually made and determined. If the plaintiff had not, in fact, repaired, the case is entitled to little weight as authority, because no point was made upon it; and the distinction not being brought to the attention of the court,—as often happens in judicial opinions,— the point was assumed without considering the question. The statement by the judge that the plaintiff, in consequence of his liability to repair, was entitled to recover the whole value of the buildings, was but the statement of the general rule upon the subject, and is correct, and as specific a statement of the rule as was called for by the points made. The general rule is stated just as specifically and positively in *Wood* v. *Griffin*, 46 N. H. 238. After stating that the tenant is liable to the remainder-man for waste committed by a stranger, the court adds: "It may also be considered as established, that, while the tenant is answerable to the remainder-man or reversioner for *waste done by a stranger, such stranger is liable over to the tenant.*" And for these propositions the court cites, among others, this very case of *Cook* v. *Champlain Transp. Co.* Yet the court, subsequently, considered the precise question now in hand, and reversed the judgment on that point. It evidently did not consider *Cook* v. *Champlain Transp. Co.* opposed to its view in that particular, or as deciding that point; for, although cited as authority upon the general rule, it was not even referred to as bearing upon the question whether the tenant must repair, or make satisfaction, before he can recover for the waste or injury to the freehold. There is another ground upon which the plaintiff was entitled to recover in that case. He was actually the owner of the buildings and machinery destroyed—of the machinery *absolutely*, and of the buildings till the expiration of the term. He erected them himself upon the leased premises for his own purposes, and without any original obligation to do so. They were not there when he took the premises, and, having himself erected them, he was under no obligation to re-erect them when destroyed, at common law. He was only liable on his express covenant, which was that the buildings he should put upon the premises should "*revert to and become* the property of the parties of the first part [the lessors] *whenever by the terms of his indenture they shall come into possession of*

*the premises.*" Until the premises should come into the possession of the lessors, therefore, the buildings remained the property of the tenant, the plaintiff in the case, and he was entitled to recover their value as owner.

So, also, in the case of *Walter* v. *Post*, 4 Abb. Pr. 382, the question is not raised by counsel, or discussed by the court. Certain instructions were asked, and refused, not presenting the point now involved; and the judge passed upon them as presented; and these were not even asked upon the idea of liability of the tenant to the reversioner, but upon an entirely different theory, and they were disposed of upon that theory. The judge afterwards remarks: "Had it appeared, however, that by the terms of the tenancy the plaintiff was bound to repair, *  *  *" then the "defendant was *liable* to make good all the injury caused by the trespasses, and enable the plaintiff to put the building in as good condition as it was when the trespass was committed." This is but a general statement of the general rule, and is a *dictum* made wholly outside the case. He does not say that the tenant could recover without first repairing, or making satisfaction to the landlord; but, on the contrary, in referring to the defects in the complaint, he distinctly intimates the contrary opinion. He says: "There is not only no averment that the plaintiff was bound to repair, but *it is not even stated that he was put to any expense in repairing, or that he made any repairs;*" as though this averment, at least, was necessary. In effect he says "that this essential fact is *not even stated,*" and suggests that when the case goes back this complaint can be amended in this particular. This case, therefore, so far as it is authority at all, is against the plaintiff on this proposition.

*Rood* v. *New York & E. R. Co.* 18 Barb. 80, does not present the question at all. It is the case of a purchaser of land in possession under his contract of purchase; Rood, the plaintiff, having purchased of Maples and gone into possession, and the action being to recover the value of wood and fences on the land burned up through the negligence of defendant. He was the equitable owner of the land under his contract; and it was very properly held that "the vendee in possession, being the equitable owner of the estate from the time of the contract for sale, must bear any loss which may happen to the estate between the agreement of purchase and the conveyance. *  *  * The loss in question is, therefore, the loss of plaintiff, and not of Maples." Pages 83, 84. The case of *Gourdier* v. *Cormack*, 2 E. D. Smith, 202, does not present the question. There is a loose remark on a hypothetical case, that assumes the general rule as to the right to recover in a proper way where there is a liability to repair; but there is nothing touching the question now under consideration. All the other cases relate to the taking and conversion of chattels, which depend upon different principles, and have no relation to the question now presented.

Where one wrongfully takes from the possession of another any article of personal property, the party from whom it is taken can, undoubtedly, recover the possession, or the value of the property, without reference to the question as to who really owns the goods. The title will not even be inquired into, unless the defendant connects himself with it. It is enough that one has wrongfully taken goods from the possession of another. He must return them, or respond to the extent of their value. So, in this state, from its first organization, a party who has been dispossessed of land by a party having no title, can recover that possession on his mere possessory title and ouster, and the wrong-doer will not be permitted to show an outstanding title, without connecting himself with it. These cases have no bearing upon the question now in issue, but depend upon other considerations. In *Wood* v. *Griffin*, already cited, the court says:

" This case is unlike the case of goods in the hands of carriers, factors, wharfingers, and other agents, who are responsible for them to their principals, because of the *different rules that apply to lands and goods.* In the case of lands in the possession of a tenant, *his interest and the interest of the landlord are distinctly marked and easily separated; and for injuries to either, there are appropriate and distinct remedies, while as to goods there is, in general, no such distinction; and such is the effect given by the law to the fact of possession, that either trespass or trover may be maintained against one who wrongfully deprives another of such possession, without any injury to the ultimate title.* But beyond this, the authorities, so far as we have any, *are opposed to the claim of the tenant to recover damages for an injury to the inheritance until he has first satisfied the landlord;* and there is nothing in the state of the law in respect to such agents, carriers, *and others* in the possession of goods, that would induce us to extend it to a case like this." *Id.* 240.

I am satisfied that the plaintiff cannot recover for injuries set out in the first count until he has either repaired, or made satisfaction to the lessors.

The demurrer must be sustained as to the first count, and overruled as to the second, which is for injuries to the estate of the tenant; and it is so ordered.