# CHARLESTON.

JORDAN *v.* CITY OF BENWOOD.

Submitted June 8, 1896—Decided Nov. 18, 1896.

1. MUNICIPAL CORPORATIONS—DRAINAGE—SURFACE WATER.

    A city is not bound to furnish drains or sewers to relieve a lot of its surface water, whether its own or that flowing from other premises.

2. MUNICIPAL CORPORATIONS— SURFACE WATER—CHANGE OF GRADE—DAMAGES.

    A city is not liable for damages to a lot owner because change of grade of a street prevents surface water of the lot from flowing off. It is not different even if the surface water is, by reason of such change of grade, increased in quantity upon the lot, if not cast in a mass or body upon the premises. Nor is a city liable for mere surface water flowing from a street upon an adjoining lot.

3. MUNICIPAL CORPORATIONS—DRAINAGE—SURFACE WATER— DAMAGES.

    A city can not by ditches, drains, or other artificial channels collect surface water, and cast it in a body or mass upon a lot. If it does so, it is liable to the lot owner in damages.

4. MUNICIPAL CORPORATIONS—PRIVATE PROPERTY—PUBLIC USE.

    The provision, in section 9, art. III, of the Constitution, that private property shall not be taken or damaged for public use without just compensation, does not render a city liable for damages to property from surface water where a private individual would not be liable.

5. DAMAGES TO REAL ESTATE—TENANT FOR LIFE—REVERSIONER —REMAINDER-MAN.

    Where a tort upon realty affects both the estate of a tenant and that of a reversioner or remainder-man, each may sue separately; and, as the damages are apportionable, each recovers damages to cover the injury done to his estate. Neither can recover damages covering the entire injury to both estates.

6. EVIDENCE—RECORDS OF CITY COUNCILS.

    Where work or other action of city authorities is claimed to have been done by its authority, the records of the city council are the proper and best evidence, if existent and accessible.

7. MUNICIPAL CORPORATIONS—STREETS—DAMAGE TO REAL ES-.
TATE—RAILROAD COMPANYS.

Where work is done by a railroad company in a street of a city under authority from the city to occupy the street for its track, the city is not liable to adjoining lot owners for injury to their lots from such work, but they must look to the company.

8. INSTRUCTIONS.

A party has the right to have an instruction given in his own language, if pertinent, unambiguous, and correct in law.

9. INSTRUCTIONS—LOST INSTRUCTION—PRESUMPTION.

An instruction, lost, and not appearing in the record, will be presumed to be correct, and no error can be assigned as to it.

CALDWELL & CALDWELL for plaintiff in error, cited 1 Lom. Dig. s. pp. 409, 468, 469; 4 Kents' Comm. 197; 2 Bl. Comm. 175; Watk. Conv. 16; 1 Steph. Comm. 290; 26 N. J. L. 525; 34 W. Va. 466; 16 W. Va. 282; 2 Dillon, Mun. Corp. (3d Ed.) §§ 1039-43, 1046; 2 Beach, Pub. Corp. § 1086 (and note); 1 Denio, 595; 25 W. Va. 808; 26 W. Va. 787; Gould on Waters (2d Ed.) §§ 263, 267, 269; 13 Gray, 601; 13 Allen, 291; 104 Mass. 13; 118 Mass. 599; 76 N. Y. 60, 63; 65 N. Y. 341; 10 Allen, 106; Const. Art. III, s. 9; 16 W. Va. 402; 38 W. Va. 438; 34 W. Va. 457; 122 Ind. 344; 45 Iowa, 406; 2 Pac. Rep. 6; 32 Mc. 431; 17 W. Va. 683; 14 W. Va. 100; 35 W. Va. 501; 3 Rand. 106; 33 W. Va. 417; 3 Hen. & Munf. 309.

WM. H. HEARNE for defendant in error, cited Lewis on Em. Dom. §§ 103, 494, 496; 11 R. I. 520; 25 W. Va. 226, 235; 28 Minn. 510; 59 Tex. 128; Acts 1883, p. 14; 15 W. Va. 204; 2 Dill. Mun. Corp. §§ 103, 496, 968, 719, 1041 (note) 1077, 1037, 995; 2 Chit. on Pl. (6th Am. Ed.) 777, s. p. 778; 38 W. Va. 439, 449; 25 W. Va. 235; 4 Leigh, 408; 4 Rand. 547; 20 Gratt. 692; 2 Minor's Inst. 370, 371; 1 Jar. on Wills (4th Am. Ed.) p. 677 (note 2); 1 Sedg. on Dam. (8th Ed.) §§ 68, 69, 72, 74; 3 Sedg. on Dam. §§ 932, 942; 38 W. Va. 645 (18 S. E. Rep. 782); 37 W. Va. 694 (18 S. E. Rep. 819); 41 W. Va. 445; 38 W. Va. 438, 4 syl. pt.; 39 W. Va. 294; 1 Thomp. Jur. Tri. §§ 352, 353, 380; Lew. Em. Dom. §§ 434, 435; 1 Greenl. Ev. (12th Ed.) § 462; 34 W. Va. 466; 25 W. Va. 233, 235; Acts 1883, p. 144; 28 Minn. 510; 2 Thomp. Jur. Tri. § 2388; 2 Chit. Pl. pp. 777 (note 1a) 778 (note p.);

Code, c. 125, ss. 9, 12; 1 Chit. Pl. pp. 72, 202; 3 Chit. Pl. p. 1058 (n. d. 1092); Code, c. 131, s. 8; 28 Am. & Eng. Enc. Law, p. 53, 54, 55 (note 3) 56 (note 7); 7 Law. Ri. Rem. and Pr. p. 5441; Abb. Tri. Ev. 723, 693; 9 Cran. 151; 17 Johns. p. 221; 21 S. E. Rep. 305; 10 S. E. Rep. 89; 38 W. Va. 456.

BRANNON, JUDGE:

This was an action by Sabina Jordan against the city of Benwood to recover damages for injury to her lot of land by reason of change of grade of a street and alley on which the lot abuts, resulting in judgment against the city, which took this writ of error and *supersedeas.*

One question is whether there is a material variance between declaration and evidence, in the fact that the declaration states the plaintiff's estate in the lot to be one in reversion, whereas the evidence shows it to be one in remainder. The declaration alleges the plaintiff to be owner of a messuage, in possession of "James McAuliff, as tenant to Bridget Clark, who then was and still is the owner of a life estate for her own life in said messuage and premises, the reversion thereof, after the termination of said life estate of said Bridget Clark, then and still belonging to the plaintiff." Here is a statement of a reversion after the termination of a given life estate, whereas the evidence discloses a will giving the lot to Bridget Clark for life, with remainder to Sabina Jordan. The pleader has only misnamed the estate of Sabina Jordan in calling it a "reversion" instead of a "remainder," but he has stated the plaintiff's estate to be an estate in fee after the termination of a given life; and what is there in the mere misnaming, the substance appearing? No surprise results to the other side. "Reversion" and "remainder" mean different things as regard the manner of derivation of title; and, in certain instances, the omission to distinguish between them accurately might be material; but they both mean an estate after the termination of a particular estate, and failure to discriminate in this case hurts no one; the defendant being told just what right in the plaintiff has been injured. Courts must look at substance.

The claim of the plaintiff for recovery is that a street and alley had been raised in grade, and that, owing to this, surface water of her own lot and some from other lots and streets, cast upon her lot by reason of the change of grade, was kept on her lot, whereas, before, this water had gone into a drain on McMechen street. The case presents the question, is a town or city bound to furnish drains to relieve a lot upon a street of its surface water, whether its own or that flowing upon it from other premises? I answer, "No." It has discretion whether to make drains or sewers or not. *Mendel* v. *City of Wheeling*, 28 W. Va. 233, 243; 24 Am. & Eng. Enc. Law, 942; 2 Dill. Mun. Corp. (4th Ed.) §§ 1041, 1046, 949.

Another question is: Suppose the change of grade of a street prevents the surface water from flowing away from land—dams it up even—is the municipal corporation liable for damages to the landowner? Answering this question, we meet with a volume of legal authority, and apparently very variant. There are two rules—one called the "civil-law rule," the other the "common-law rule," though it seems it did not originate in England. Most of our states have adopted, as the basis of decision in the main, the common-law rule, but some have adopted the civil-law rule as the more just and logical. The civil-law rule is expressed in the Code Napoleon thus: "The owner of the lower ground is bound to receive from the higher ground the water which naturally flows down without the human hand contributing to its course. The owner of the lower ground is not permitted to make a dike to prevent such flowing. The owner of the higher ground can do nothing to aggravate the servitude or easement of the lower ground." Under this law, neither of these owners can stop surface water. Very different is the common-law rule. It says each owner may fight surface water as he chooses. He may use it all, divert it away from the lower land, may prevent its invasion of his own land, and thus dam it up on his neighbor's land. He may, in the use of his land, cause it to flow differently upon his neighbor's from what it did before. Gould, Waters, § 263, very clearly states the basic principle thus: "Water spread over the surface of land, or gathering in

natural depressions, or into swamps or bayous, or percola-
ting the soil beneath the surface, if flowing in no definite
channel, does not constitute a water course, and is not sub-
ject to the law regulating riparian owners.   By the com-
mon-law no rights can be claimed *jure naturæ* in the flow of
surface water, and its detention, expulsion, or diversion is
not an actionable injury, even when injury results to others."
24 Am. & Eng. Enc. Law, 907, 917; extended note, *Gray* v.
*McWilliams* (Cal.) 21 Lawy. Rep. Ann. 593; 32 Pac. 976;  2
Dill. Mun. Corp. § 1039; 3 Minor, Ins. 18; *Bowlsby* v. *Speer*,
86 Am. Dec. 216; Washb. Easem.  489, 495, 499;  *Martin* v.
*Jett*, 32 Am. Dec. 120, and valuable full note on page 123;
*Mayor, etc.* v. *Sikes* (Ga.) (20 S. E. 257).   The common-law
rule recognizes the old maxim respecting ownership of real
property, and is based on it, "*Cujus est solum, ejus est usque
ad cœlum.*"   Any other rule would be a restraint upon own-
ership.   Without it a man building houses, wall, or fences,
or even in works of agriculture, would be open to constant
assault.   Of course, it is to be so applied as not to violate
reason.   The common-law rule has been  recognized as ap-
plicable in the mother state of Virginia in *Railroad Co.*
v. *Carter*, 91 Va. 587 (22 S. E. 517).   There is no pointed
West Virginia case,  *Gillison* v. *City of Charleston*, 16 W. Va.
282, and *Knight* v. *Brown*, 25 W. Va. 808, recognize the
general rule inferentially.   By some cases it has been more
rigidly applied to the exemption of the lot-owner using his
lot as he pleases, and municipal corporations, than as to
country lands; but the better thought is that the rule is the
same in both cases.   Therefore the city of Benwood would
not be liable for obstructing the flow of surface water from
this lot in raising the street grade, if the work was done
without negligence, and doing its work with reasonable
skill, in the usual way of doing such work, and the damage
a mere incident of the work.   2 Dill. Mun. Corp. § 1051,
cl. 1.

Another question is, is the city liable for surface water
which its work for the first time brought upon the plaintiff's
lot from other premises than hers?  Here we meet with
some trouble.   There are various and variant decisions,
even where the common or civil law rule prevails.   The

city is engaged in lawful work on its own ground, and it happens that, from it, some surface water is changed in its course, and thrown on another's lot, thus increasing the quantity on that lot. This is not actionable, but *damnum absque injuria*, where the common-law rule holds, just the contrary to the civil-law rule, which, as above quoted, says that "the owner of the higher ground can do nothing to aggravate the servitude or easement of the lower ground." If you logically apply the common-law rule, you must say that if, in the use of his land, one stops surface water in its natural course, and turns it in another direction, whereby it goes upon land of another as it never had done before, yet there is no right of action for this, because the letter of the common-law rule is that surface water is, like waters of the sea, an enemy, which each may fight, and which he may consume, repel, or expel, without regard to any injury thereby occasioned to another proprietor. *Mayor, etc.* v. *Sikes* (Ga.) (20 S. E. 257); note in *Railroad Co.* v. *Smith*, 48 Am. St. Rep. 588; s. c. 17 South. 78; *Railway Co.* v. *Keys* (Kan.) 49 Am. St. Rep. 249, and note, 253; s. c. 40 Pac. 275. Here we meet two fundamental maxims of the law, old as the centuries, in regarding which the courts have given a wilderness of conflicting decisions, often governed by the particular cases before them, and, indeed, in presence of these maxims, courts can do little better. The effect of one of these maxims is, "He who owns the soil, owns it down to the center of the earth and up to the skies;" that is, he has complete and perfect dominion. The effect of the other maxim is, "So use thine own that thou dost not injure another." I repeat, that if one, in using his own land, diverts surface water from its usual course, and it turns upon another's land, where it never before has gone, no action lies, where the common-law rule prevails. He has the right to shut out surface water, thus casting it back on his immediate neighbor, and, if it goes from him to visit another whom it never knew before, it is no matter. 24 Am. & Eng. Enc. Law, 907, 917; authorities last above cited; Gould, Waters, §§ 267, 268; Washb. Easem. (4th Ed.) 494; Ang. Water Courses, § 108a; *Lynch* v. *Mayor, etc.*, 76 N. Y. 60; *Gannon* v. *Hargadon*, 10 Allen,

106; 87 Am. Dec. 625, and note; *Railroad Co.* v. *Hammer*, 31 Am. Rep. 216; *O'Connor* v. *Railway Co.* (Wis.) (9 N. W. 287). But this rule seems harsh, applied without limitation, and, even where the common-law rule was the basis or standard of decision, an exception was recognized. While recognizing the right of the owner of the higher field or lot to throw his surface water upon the lower, even if, in the use of his land, it changed or increased the flow upon the lower field or lot, yet it must not be collected in a body, and in such body or mass cast upon that lower field or lot. So say our cases of *Gillison* v. *City of Charleston*, 16 W. Va. 383 and *Knight* v. *Brown*, 25 W. Va. 808. So says the civil law, as we have seen. So say many authorities, even where the common-law is adopted. *Railroad Co.* v. *Carter*, 91 Va. 587 (22 S. E. 517) (opinion) and cases cited. If, from one's own use of his land, surface water naturally flows in different directions or quantity upon another's land, as a mere consequence or result of such use, no actionable injury is done; but he has no right to "collect the water in artificial channels, and discharge it on an adjacent proprietor. This is alike the rule of the common and civil law. And a municipal corporation has no greater right in this respect than a private landowner"—is the rule stated in Gould, Waters, § 271. In *Field* v. *Inhabitants*, 36 N. J. Eq. 118, admitting the general common-law rule as to surface water, it was held that a town can not "discharge water drainage from the surface of its streets on private lands in such quantities as to impair value and use of them." There they conducted the water by new channels in unusual quantity. "Cities and towns have no greater rights than individuals to collect in artificial channels upon their streets and highways mere surface water, distributed in rain and snow over large districts, and precipitate it upon the premises of a private owner, or construct ditches upon private lands for public use without compensation.

"A municipal corporation is liable for throwing water, collected in large quantities in a street, or in the gutter of a street, upon the land of a private owner"—says Gould, Waters, § 272, on the authority of many cases. Judge Cooley, in his work on Torts (page 580, cited in *Gillison* v.

*City of Charleston*, 16 W. Va. 302) says the same—that while towns are not compelled to make gutters to protect owners against surface water from public ways, yet if they actually construct such as must carry water on adjacent lands, they are as much liable as if they had sent their servants upon them. "One proprietor has no right to cause a flow of surface water from his own land over that of his neighbor by collecting it in drains, culverts, or artificial channels"—say Ang. Waters, § 108; 24 Am. & Eng. Enc. Law, 549; 2 Dill. Mun. Corp. § 1042, and note; opinion in *Lynch* v. *Mayor, etc.*, 32 Am. Rep. 271. See, specially, 2 Dill. Mun. Corp. § 1051, cl. 3. This exception needs to be emphasized, because it is a logical exception to the generality of its application, and essential to bar it from sheltering many instances of injustice. These doctrines apply where the water goes to other land, where it did not go before, as will be seen from some of the authorities. Ang. Waters, § 108 *et seq.* I do not understand this case as falling under this exception. The same rules apply to a municipal or railroad corporation as to an individual. Opinion in *Railroad Co.* v. *Carter*, 91 Va. 587, 592 (22 S. E. 517); Gould, Waters, § 272; *Lynch* v. *Mayor, etc.*, 76 N. Y. 60; 2 Dill. Mun. Corp. § 1051, cl. 3. If a city, in changing grade, causes water collecting on its streets, flowing therefrom merely as surface water, to go on adjoining land, it is not liable for damages. Gould, Waters, § 269.

Another question in this connection has been argued and calls for decision. It is this: Though a municipal corporation may be not liable for such injury from surface water at common-law, there is the clause of the constitution that private property shall be neither taken nor damaged for public use without just compensation; and does not this alter the case? This clause originally provided against only what was a "taking" of property for public use, and not against what only damaged it consequentially, and was not a taking; and the word "damaged" was first put in the Constitution of 1872 to cure this hardship. It was not designed to put on the state, or upon counties or municipal corporations as subordinate parts of state government, a burden not resting on private corporations or individuals

under the same circumstances. If an individual or private corporation were, in lawful work, to hurt a citizen's land, as, for instance, by an embankment rendering access to it dangerous or inconvenient, the corporation would have been liable; but a town or city would not, because of its being a city or town, engaged in a governmental operation. This clause meant to make the public equally liable for that act of injury. If, however, an individual or private corporation, in lawful use of property, were to injure another by repelling surface water, it would not be liable; and it can not be thought that the clause in the Constitution was designed to make a city liable in such case, where others would not be. In *Mayor, etc.* v. *Sikes* (20 S. E. 257) the court says, of just such an amendment to the Georgia constitution, that it designed to make municipal corporations "liable to make compensation in damages if an individual would be liable for causing injuries or damages of the same kind." That the house injured was built prior to the establishment of a street is immaterial. It is not like the case of *Hutchinson* v. *City of Parkersburg*, 25 W. Va. 226; as there the act of the city was actionable, not one of surface water.

Other questions touching evidence refused are made in the case, but, not being made the subject of bills of exception, or specification in the motion for new trial, are not considered. *Hughes* v. *Frum*, 41 W. Va. 446 (23 S. E. 604.)

Another question is whether the verdict should be set aside because it appears that the plaintiff recovered as for the entire damage to the premises, instead of only for damage to her remainder. The declaration counted only on damage to the reversion, and we do not know how the jury reached the sum it did reach. We do not know whether it deducted for the life estate of Mrs. Clark, then in possession as life tenant; but, as there is no evidence of any discrimination, it may be said to cover the entire estate for life and in remainder. If there be a tenant for years or life in actual possession, he can sue for any trespass affecting his immediate residential· interest; and the reversioner or remainder-man, if the act does a permanent

injury to the inheritance, may sue as to that; but they are separate claims. Where the injury is of permanent nature, deteriorating the market value of the property, so that if the remainder-man or reversioner were to sell, it would fetch less money in the market, there is damage to the reversion or remainder, for which the reversioner or remainder-man may sue. Where the same act affects both the limited estate and remaining fee, the damages are apportionable between the tenant of the particular estate and him of the fee. The particular tenant recovers for damage only to present enjoyment, covering his entire term, if it affects the entire term, and the remainder-man or reversioner only for damage to the remainder or reversion. Suth. Dam. 1033; 1 Add. Torts, 407-409 (marginal); *Dry Dock Co.* v. *Armstrong*, 17 Fed. 216; Sedg. Meas. Dam. § 74. This discrimination of right between the two is plain in the law books, and must be carried out in practice. How? The books do not just say. But they say, as reason says, that the damage to the reversion or remainder is the amount that estate is diminished in value. Suth. Dam. 1034; 1 Add. Torts, 408. But that is only the market value of the remainder after the end of the particular estate, and it is difficult to get at that, unless we ask the market value of the property before and after the injury, regardless of the two estates, and then seek the value of the estate for years or life on the basis of the annual rental value multiplied by the number of years remaining of the term of years, or by the number based on the expectation of life of the life tenant. Sedg. Meas. Dam. § 72.

Another question: Whether the court erred in refusing to reject all the evidence as insufficient to sustain the action, particularly that mere oral evidence tending to show authority from the city to make the fills. The work was done by a railway company under alleged authority from the city. *Childrey* v. *City of Huntington*, 34 W. Va. 457 (12 S. E. 536) holds that the records of council must be produced, if accessible; and there is error under this head.

Another question: The change of grade on the street was made by a street-railroad company under authority from the city. Is the city liable at all? I have found no

law asserting the liability of the city. It grants authority, a mere license, under sanction of the legislature, for the construction of railroads in the street, but does not become guarantor for all damages resulting to abutting owners. The railroad is not its work, nor performing as officer or agent of the city the functions incumbent on it, whether an ordinary or street passenger railway. It makes no difference that city officers overlook the work to see that no violation of public interest occurred. I have found no law holding the city liable, and none is cited; but several cases show the reverse. *Burkham* v. *Railroad Co.*, 122 Ind. 344 (23 N. E. 799) held that the city, in such grant, does not deprive the adjoining owner of the proprietary right in the street, but grants only a privilege under power given by the sovereign, and is not liable for merely exercising this right; and where there is any right to compensation, it is against the railroad company, not the city. To same effect are *Frith* v. *City of Dubuque*, 45 Iowa, 406; *City of Denver* v. *Bayer*, 2 Pac. 6 (7 Colo. 113); *Green* v. *City of Portland*, 32 Me. 431. It would be different as to defects in the street causing injury to a traveler, as the city would be liable for injury from actionable defect caused by railroad, as it is under statute to maintain a good street. The city is primarily liable, and the company liable to indemnify it. 2 Dill. Mun. Corp. § 1037. Under these principles, plaintiff's instructions Nos. 2 and 3 are wrong, and the refusal of defendant's instructions Nos. 2 and 4 was wrong; and also the refusal of the court to give an instruction, not numbered, that "the law does not require the city to furnish a drain or sewer to carry away water from the cellar on the premises or from the premises." That instruction propounded the law correctly, and a party has a right to an instruction in his own words, if correct in law and unambiguous. *State* v. *Evans*, 33 W. Va. 417 (10 S. E. 792). The court added to the instruction, against the defendant's objection, the words, "Such as collected in said cellar or upon said premises before May, 1893." The declaration was for injury from surface water on the —— day of May, 1893, and afterwards. The effect of this amendment was to tell the jury that, as to water in the cellar or on the premises after May, the city

was bound to furnish a drain or sewer, no matter in what manner or from what cause such water was there.

An instruction that is lost is mentioned. It is not necessary for me to mention it, further than to say that, as it is not in the record, we must presume it was free from error, as the court held as to a lost writ in *Turberville* v. *Long*, 3 Hen. & M. 309. Judgment reversed, verdict set aside, and new trial awarded.