15080

MILHOUS v. STATE HIGHWAY DEPARTMENT

(8 S. E. (2d), 852)

*Messrs. John M. Daniel,* Attorney General, *J. Ivey Humphrey* and *M. J. Hough,* Assistants Attorney General, ▮

*Messrs. Crum & Crum,* for respondent,

May 7, 1940.

The opinion of the Court was delivered by MR. JUSTICE STUKES.

This action was brought by the respondent against the State Highway Department plainly under the rule of *Chick Springs Water Co. v. Highway Department,* 159 S. C.,481, 492, 157 S. E., 842, 950, for the sum of $5,000.00 and resulted in a verdict for $1,250.00 which the lower Court refused to set aside, and also refused to grant a new trial upon grounds hereinafter alluded to. From the judgment entered thereupon this appeal was taken upon several exceptions which raise the points, briefly stated, that the al-

leged taking of the property of the plaintiff for public use resulted from damage thereto by surface waters only, which defendant had a right to "fight off" of its right-of-way which had been acquired from the plaintiff by condemnation and which it had the right to protect from surface waters as an individual would have, that the trial Judge erred in his instructions to the jury in that he charged in several particulars upon the facts and confused the jury, and that the amount of the verdict was excessive under the testimony and should have been set aside or reduced by means of an order for new trial.

The questions so raised by the exceptions which were appropriate therefor were included in grounds for motions for directed verdict and new trial, and therefore are properly before this Court and will be disposed of herein.

It is alleged in the complaint that the respondent is the owner of a tract of 899 acres of land in Bamberg County through which State Highway No. 33 was reconstructed and hard surfaced in 1937 largely upon the old location, that theretofore respondent had a series of ditches alongside and openings through the road which drained his lands satisfactorily, but that the reconstruction of the road by the appellant included the raising of the grade of the roadbed, which the witnesses for the appellant admitted in testimony but stated that such increased elevation was less than that alleged; that there also formerly existed a large pit near the road which served as a temporary reservoir for surplus rainfall, which pit was filled, as were former ditches, the latter having been replaced by the appellant with other ditches and piping alleged to be insufficient to provide as effective drainage as respondent previously had, with the result that portions of the land are submerged and other portions inadequately drained with resulting permanent injury to the land, abandonment of some of it and diminished productivity of other of it, all of which is alleged to constitute a taking of private property of the respondent by the

appellant for public purposes without just compensation in violation of the provisions of the State and Federal Constitutions. The answer contains a general denial, except that the highway was constructed pursuant to statutory authority, that a right-of-way was obtained from respondent for such construction as the result of two condemnations in which the awards aggregated $250.00, duly paid to respondent, and from which he took no appeal; and that the highest degree of care was exercised in the grading of the road and the drainage thereof so as to care for the waters falling on the highway and on the respondent's adjoining land, so that such adjoining property has been benefited.

The somewhat similar case of *Chick Springs v. Highway Department, supra,* in which the cause of action was sustained, involved the alleged insufficient provision by the Department for the flow of a natural water course which a highway crossed, with the result that the land of the plaintiff in that action was damaged. The late eminent Justice Cothran, speaking for this Court, concluded thus: "This protection [action by the property owner] is afforded to the humblest citizen by the Constitutions of the state and the United States, and neither government can itself or by any statute or through any agency take property without paying compensation. 'Immunity from suit' cannot avail in this instance, and, if no statute exists, liability still exists, because as to this provision the Constitutions are self-executing." He further made reference to the case of *Faust v. Richland County, infra,* to the effect that this Court went further there than was necessary to go in the *Chick Springs case* for in the former case the holding was "that, notwithstanding the right of the county to fight back surface water from its property, in the exercise of a time-honored right, it could only do so without injuring the plaintiff's property. In the case at bar [Chick Springs] there is no suggestion that the defendant was exercising a legal right." Closely following the *Chick Springs case* and ruled by it was *Greene v. Highway Department,* 160 S. C., 132, 158

S. E., 159. It involved substantially the facts alleged here but the questions that are now presented were not raised in that case.

The provision of our Constitution of 1895, held by the foregoing authorities to be self-executing, and under which respondent brings this action is Section 17 of Article 1: "Private property shall not be taken * * * for public use without just compensation being first made therefor." Cited with approval in the *Chick Springs case, supra,* with several cases from this Court to the same effect is the following from 10 R. C. L., 70: "There may be a taking of property in the constitutional sense although there has been no actual entry within its bounds and no artificial structure has been erected upon it. When a public agency acting under authority of statute uses land which it has lawfully acquired for public purposes in such a way that neighboring real estate, belonging to a private owner, is actually invaded by superinducted additions of water, earth, sand or other material so as effectually to destroy or impair its usefulness, there is a taking, within the meaning of the constitution."

There is no need to encumber this opinion with a reference to the earlier authorities which were carefully reviewed in the Chick Springs decision or the subsequent similar cases to one of which reference is made above. *Greene v. Highway Department, supra.*

The positions taken by the appellant in the Circuit Court and its exceptions present the question of whether a governmental agency is liable under the provision of the Constitution above referred to for damage to private property, amounting to the taking thereof for a public purpose, by the obstruction of surface waters; and appellant asserts that the State should be held to liability therefor only as would an individual or private corporation, which liability appellant asserts exists, under the law of this State, only when surface waters, the result of rain and snow fall, as distinguished from a natural water course, are im-

pounded or collected and thrown with force upon the land of another. Thus appellant argues that the State may raise the elevation of a roadbed for construction or improvement purposes without liability for damage to the land of an adjoining owner caused by the resulting obstruction of the natural flow of the surface waters, just as he contends a private owner may defend his property by a wall or other obstruction from the flow of surface waters from the lands of his neighbor. There is respectable authority in other jurisdictions for this position. It is well illustrated by the case of *Jordan v. City of Benwood,* 42 W. Va., 312, 26 S. E., 266, 36 L. R. A., 519, 57 Am. St. Rep., 859, but we are of the opinion that under the broad provision of our Constitution, quoted above, the liability sought to be established by the plaintiff in this action should exist where there is a "taking" whether it be by the obstruction of a stream as in *Hopkins v. Clemson College,* 221 U. S., 636, 31 S. Ct., 654, 55 L. Ed., 890, 35 L. R. A. (N. S.), 243, by the casting of surface waters in force and impounded quantities as appellant asserts was alleged in *Faust v. Richland County,* 117 S. C., 251, 109 S. E., 151, or as here alleged by the mere obstruction of the natural flow of surface waters. Certainly there can be no practical difference to the landowner whose property is taken or damaged and practically it is no less a "taking" whether it results from the one circumstance or the other.

At least some of the authorities in other jurisdictions which limit the liability of the sovereign for damage ("taking") by surface waters to the corresponding liability of an individual, *Jordan v. City, supra,* do so upon the ground that the cited constitutional provision removes the cloak of immunity from suit, creates no liability but merely refers the latter to the common law; but our established rule is to the contrary and can be best illustrated by the following quotation from the Chick Springs decision, *supra*: "From the above authorities it is indisputable that the constitutional provision quoted is self-execut-

ing, and, the Legislature having enacted no statute providing for the compensation guaranteed by the Constitution applicable to the facts of this case, an action at law will lie to recover such compensation."

Since the constitutional provision is not necessary to, and does not, afford the remedy, does not merely remove the State's immunity from suit, we think it follows that it creates a right in the citizen to compensation for property taken for public use unfettered by limitations of the rules of the common law applicable under similar circumstances to the liability of an individual. Damage resulting to one from the defense by his neighbor from surface waters under the "common enemy" rule of the common law, assertedly of force in this State, is referred to as *damnum absque injuria* which may be translated "damage without legal remedy," but under our quoted decisions the common law affords a remedy against the State for one whose proprety is damaged or taken for public use within the terms of the Constitution.

Moreover this case is ruled by *Faust v. Richland County, supra,* when the latter is considered in the light of the analysis of the facts really alleged in the complaint in that action, which enlightening analysis is contained in the valuable dissenting opinion of Mr. Justice Cothran. It is true, as pointed out by appellant here, the complaint refers to surface waters accumulated in great volume and forceful flow but the underlying facts alleged show that such terms were inappropriate and the ultimate fact alleged was that of protection or defense from surface water. See page 264 of 117 S. C., 109 S. E., 151. This Court so interpreted the *Faust case* in its opinion in the *Click Springs case* where the writer, again Mr. Justice Cothran, explained his dissent from the Faust decision as principally based upon the ground that the defendant in the latter had the right to divert surface water and that the exercise of such right did not constitute a "taking."

We think and hold that a property owner is entitled under the applicable constitutional provision to compensation for the damaging or taking of his property resulting from the obstruction by the State of surface waters although an individual defendant may not be liable for damages under the same circumstances; this for the reason that the Constitution provides that private property shall not be taken for public use without compensation, without any qualification as to the method or means of such taking. We think that sound public policy requires such a rule, as was expressed in *Nevins v. Peoria,* 41 Ill., 502, 89 Am. Dec., 392, to the effect that the theory that private rights are ever to be sacrificed to public convenience or necessity without full compensation is fraught with danger and should find no lodgment in American jurisprudence. Appellant's exceptions making the point just discussed are, therefore, overruled.

Another group of exceptions are founded upon the contention that the State, having condemned the right-of-way for the highway through the land of respondent and the latter having been paid the amount of the awards by the condemnation boards, there can be no recovery in this action. It appears that there was first condemned a right-of-way seventy-five feet in width and thereafter along a portion of the route an additional seven and one-half feet in width was condemned. The award in the first proceeding was $200.00 and in the latter, "Fifty Dollars and a machine ditch that will take care of the surface water to be put on the right hand side of the road going south from Bamberg * * * ." Both awards recite that the amounts were arrived at after taking into consideration the benefits accruing to the landowner incident to the construction "the value of the lands being taken together with any special damages occasioned by the construction or improvement of the Highway." The landowner did not appeal from either of the awards.

While the contention is made as stated, that because of such condemnations and awards the State could construct as it pleased upon the right-of-way acquired, the point was not pressed in argument and we do not think it is tenable. Construction plans did not accompany the notices of condemnation and the "special damages" for which compensation was, or may have been, included in the award we think was not intended to, and did not, include anything by way of damage or compensation for damages occasioned to the plaintiff's remaining land as the result of the manner of the contemplated construction. Indeed, had respondent needed assurance that appellant contemplated provision of sufficient drainage structures, such was afforded by the portion of the award quoted above. The point was made and disposed of as here in the *Chick Springs case* in the following language of the Court: "33 St. at Large, pp. 1193, 1216, gives to the state highway department the same power to condemn lands for rights of way as are conferred by law upon county commissioners, but this act limits the power of condemnation to the acquisition of rights of way and materials, and has no application to a taking outside the limits of the right of way, as in cases like the present one, where the taking is the result of impounding of the waters of a stream causing permanent injury to property, as is shown by the Faust and other cases in which the right to maintain actions at law has been sustained against counties and cities where there was a taking under circumstances similar to the case at bar."

The notices, set out in the record for appeal, particularly described the property to be acquired which was bounded by the limits of the right-of-way as established by the Department. The applicable law is found in the 1932 Code, Section 5921 *et seq.*, consideration of which shows that they do not contemplate the inclusion in the award of the value of lands taken as alleged in this action outside of the limits of the right-of-way.

The exceptions based upon this contention are therefore also overruled.

Exception 6 is as follows:

"6. That his Honor erred in charging the jury as follows: 'That is, has he shown you by the greater weight or preponderance of the evidence, that in the construction of the drainage system,. whereby the water is to be taken from one side of the road and passed to the other—from the higher areas to the lower areas—that if the drainage of his property or land—that they did it in an improper way and thereby brought damages to him by way of making his property adjacent thereto less useful and less productive to him than it ought to be in its normal use and employment.'

"The error being that there is no duty on the part of the defendant, State Highway Department, to drain the plaintiff's lands, though the charge of his Honor indicated to the jury that the defendant would owe this duty to the plaintiff."

We agree with appellant's criticism of the quoted portion of the Court's charge for the jury may well have understood, to defendant's prejudice, that it was defendant's duty to provide perfect drainage of plaintiff's property, whereas the jury should have been instructed to the effect that the defendant was bound to furnish drainage only at least equal in capacity and efficiency to that existing prior to the reconstruction of the highway. This exception is sustained.

Exceptions 7 and 8 are as follows:

"7. That his Honor erred in charging the jury as follows: 'In a case which was tried on a question of law before the Supreme Court, the Supreme Court, in writing the opinion, used this language: "The complaint alleged that the defendant, while making repairs to said highway, carelessly and negligently and in utter disregard of rights of plaintiff, filled in the drainage ditches along the road in front of the plaintiff's house and elevated the road-bed so as to cause the

rains which fell upon the roads and lots adjacent thereto, to accumulate in great volume and flow with great force across plaintiff's yard and under his house and through his premises, thereby damaging said premises." '

"The error being that this is a charge upon the facts, and that it was a charge upon facts in another case which do not appear in the present case, in that there was no evidence in the present case of the accumulation of water in great volume and causing it to flow with great force across plaintiff's yard and under his house, and that this was prejudicial to the defendant, in that the jury was led to believe that in the present case there was an accumulation of rain water and a casting of it, with great force, on the plaintiff's lands.

"8. That his Honor erred in charging the jury as follows: 'But there is even a stronger reason why the demurrer was properly overruled. The County in this State who was charged, said that it was surface water and it converged into a sluice and was thrown upon the plaintiff's lands, but there was no responsibility upon the county as it was surface water. Judge Gary said in that case: "There is even a stronger reason why the demurrer was properly overruled, to wit, the overflowing of the plaintiff's lands in the manner alleged in the complaint, was in violation of the constitutional provisions, prohibiting the taking of property with due process of law and likewise with just compensation being the first made." '

"The error being that this was a charge upon the facts and on facts in another case which do not appear in the present case, and was prejudicial to the defendant, in that it referred to the conversion of surface water into a sluice and the throwing of such water upon the plaintiff's lands, whereas no such evidence appears in the present case, and the jury was thereby misled."

In the opinion written by the present Chief Justice ▮▮ in *Peay v. Durham Life Insurance Company,* 185 S. C., 78, 193 S. E., 199, 202, is found an excellent discussion of the danger incident to the reading from de-

cisions of other cases references to the facts of such cases in that such may easily mislead the jury to believe that the Court is referring to the facts of the case on trial or indicating his opinion thereabout. We are of the opinion that the trial Judge committed prejudicial error by violating the rule thus stated in the *Peay case*: "It is conceded that a trial judge may read to the jury from the opinion of the Supreme Court in another case, but it is a power which should be exercised with great care. It is the duty of the court in such case to see that the facts in the case from which he reads to the Jury are in exact accord with those of the case being tried; or, if they are not so in accord, he should explain to the jury wherein the differences lie. Otherwise, he confuses them, or misleads them."

Exceptions 7 and 8 are therefore sustained.

We find no error as charged by Exception 9, with respect to other instructions to the jury, and it is overruled.

Exception 10 is as follows:

"10. That his Honor erred in charging the jury as follows: 'He is not selling his land to the Highway Department, not taking it from him, but compensating him for the depredation accruing to him, whatever it may be.'

"The error being that this was a charge upon the facts and was prejudicial to the defendant, in that it indicated to the jury that there had been a depredation."

The portion of the instructions to the jury here quoted appears to be based upon the assumption that the plaintiff had been damaged as the result of the road construction which was a principal issue in the case and concerning which the evidence was in sharp conflict so we think the criticism is well founded and we do not find that consideration of the charge as a whole cures the error. This exception, No. 10, is sustained.

The exceptions, 11 and 12, based upon the refusal of the Court to grant a new trial or do so unless the plaintiff should consent to the reduction of the amount of the verdict be-

cause it was not warranted by the testimony, will not be considered in view of the necessity of a new trial.

Judgment reversed and the case remanded for a new trial.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.