334 S.E.2d 630

**Everett D. ROWAN, Jr.**

**v.**

**Arlan D. BARKER, et al.**

**and**

**Everett ROWAN, Adm., etc.**

**v.**

**Arlan D. BARKER, et al.**

**No. 16194.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 29, 1985.

Decided June 6, 1985.

Rehearing Denied July 10, 1985.

LaVerne Sweeney, Grafton, Timothy R. Ruckman, Callaghan, Callaghan, Ruckman & Vaughan, Richwood, for appellants.

PER CURIAM:

Everett Rowan, as administrator, filed a civil action against the defendants, Arlan D. Barker, Herschel Rowan, Everett Rowan, Jr., and Jack Jamison, for negligently causing a fire that resulted in the death of his son, Robert Rowan. At the conclusion of all the evidence, the Circuit Court of Braxton County directed a verdict in favor of the defendants, ruling that the plaintiff had failed to sufficiently establish the cause of the fire. After a careful review of the record, we conclude that the trial court was correct and affirm its decision.

At some time in April, 1975, defendants Everett Rowan, Jr., and Jack Jamison began living in a cabin free of charge in an area known as Camp Scott, which was owned by defendant Arlan D. Barker. Barker, who lived in Cleveland, Ohio, gave his approval of this living arrangement to Herschel Rowan, who did electrical and other work at the trailer park. At that time, Barker had been advertising to hire a permanent caretaker for Camp Scott and until a caretaker was hired, he wanted somebody to live in the cabin to discourage vandalism. On April 26, 1975, Everett Rowan, Jr., his brother Robert Rowan, and a number of friends had a party in the cabin. Later in the evening everyone except Robert Rowan left the cabin to go to a bar. Subsequently, Robert Rowan was killed when the cabin was completely destroyed by fire.

The crucial fact that the plaintiff attempted to prove was that the fire was caused by repairs made a few days earlier by Everett Rowan, Jr., and Jack Jamison on an electric wall heater in the cabin. Everett Rowan, Jr., testified that soon after moving into the cabin, he informed his uncle Herschel Rowan that the heater was not working because a wire had burned in two. He stated that his uncle told him to get another piece of wire to replace the defective one. Herschel Rowan denied the statement that he had advised his nephew how to fix the heater, but did testify that he had been informed that some type of repair had been made on the heater. Jamison testified differently in that he said the repair of the heater consisted simply of reattaching a wire that was already inside the heater to its connection. He denied using wire from an extension cord for the repair.

The plaintiff's main witness on the cause of the fire was Robert Hall, who was the

deputy state fire marshal in charge of investigating the fire. He concluded from examining the charred remains of the cabin that the fire was accidental in origin. His ability to discover the cause of the fire was hampered by the extent to which the cabin had been destroyed by the fire. He concluded that the source of the fire appeared to have been the electric wall heater in the living room. The heater had been so damaged by the fire that it was not possible to analyze from the physical remains whether the repair was the cause of the fire.

In his testimony, Hall emphasized that knowing exactly how the repair to the heater had been performed was essential in understanding whether the repair caused the fire. He explained that the electrical problems created by the repair would vary dependent upon the type of wire used, the placement of the wire, the type and condition of the heater, and a number of other factors. His only knowledge of the nature of the repair done to the heater came from Everett Rowan, Jr., and Jamison. In view of all the evidence he could gather, Hall concluded:

"I did form an opinion as to the heater being a probable cause involved with the fire. As to the relationship between the extension cord, the rewiring job done by Jamison and Rowan, I had insufficient basis to determine a cause and effect relationship between that wiring and the actual cause of the fire."

In explaining his inability to state whether the fire was caused by the repair to the heater, Hall stressed the lack of specific evidence available with regard to the repair:

"Number one, the extension cord alleged to have been used was no longer present and secondly, in the absence of that evidence and knowing precisely how that rewiring job was done, I would have no scientific basis on which to say this was the cause and effect, because that did this, this happened. I did state that

the wiring job itself, based upon what they indicated had been done, would have been wrong, that it would have been wrong. That it would not have been the proper means of wiring or rewiring an appliance, but to say that that particular wiring job was the cause of the fire, I cannot say that."

■ We held in Syllabus Point 5 of *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260, 75 A.L.R.3d 315 (1973):

"Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed."

*See also* Syllabus Point 3, *Robertson v. Lemaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983); Syllabus Point 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978); Syllabus Point 1, *Lambert v. Goodman*, 147 W.Va. 513, 129 S.E.2d 138 (1963).

■ The trial court directed a verdict for the defendants because the plaintiff failed to establish that the defendants' negligence was the cause of the fire that resulted in the death of Robert Rowan.[1] Syllabus Point 1 of *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973), is applicable to the present case:

" 'To recover in an action based on negligence, the plaintiff must prove that the defendant was guilty of primary negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains and if the plaintiff fails to establish such primary negligence the court should direct a verdict for the defendant.' Point 1, Syllabus, *Davis v. Cross*, 152 W.Va. 540 [164 S.E.2d 899 (1968)]."

■ The physical remains of the cabin were not sufficiently intact for the fire investigator to arrive at any definite cause of the fire. The fire investigator's knowledge of the repair came from statements made by Everett Rowan, Jr., and Jamison, which were conflicting and unspecific. At

---

1. No theory of product liability was asserted by the plaintiff. *See Star Furniture Co. v. Pulaski Furniture Co.*, 171 W.Va. 79, 297 S.E.2d 854 (1982). While the plaintiff apparently urged a res ipsa loquitur theory, it appears that the trial

court correctly rejected this theory on the ground that the plaintiff failed to show exclusivity of control over the instrumentality which allegedly caused the fire. *Royal Furniture Co. v.*

trial, Everett Rowan, Jr., claimed that wire from an extension cord was used in the repair of the heater. Jamison testified that the repair consisted of simply reattaching a wire already inside of the heater. Furthermore, neither of these two defendants could testify as to the precise kind of wire used, from which the fire investigator may have been able to make a more definite conclusion. His conclusion that the fire probably started in the heater did not establish negligence on the part of the defendants.

The plaintiff argues that this case should have gone to a jury under Syllabus Point 1 of *Pygman v. Helton*, 148 W.Va. 281, 134 S.E.2d 717 (1964), which deals with the admissibility of expert medical testimony on the causal relationship between an accident and an injury. *See also Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W.Va. 689, 271 S.E.2d 335 (1980). However, the problem in this case is not the degree of certainty of the expert's testimony regarding the cause of the fire, but the fact that he could not state that the repair was the cause of the fire. Because we hold that the trial court was correct in directing a verdict in favor of the defendants based on the lack of evidence on the cause of the fire attributable to the defendants, we do not need to address the remaining assignments of error having to do with possible theories of liability and damages.[2]

We, therefore, conclude that the Circuit Court of Braxton County properly directed a verdict in favor of the defendants.

Affirmed.

---

*City of Morgantown,* 164 W.Va. 400, 263 S.E.2d 878 (1980).

**2.** Also assigned as errors are two evidentiary matters that merit only brief discussion. First, the plaintiff argues that he should have been able to impeach the expert, Robert Hall, on the statement made in his written report that the fire was caused by "electric unit improperly wired." Any error committed regarding this report was harmless because such impeachment evidence of a nonparty witness is not ordinarily substantive evidence and therefore would not have helped the plaintiff in proving the cause of the fire. *See* McCormick on Evidence § 251 (3d ed. 1984). Second, the plaintiff wanted to cross-examine Herschel Rowan as an expert on electrical wiring by quoting portions of a learned treatise, the National Electric Code. By using the learned treatise, the plaintiff sought to prove that the gauge of wire used in the repair was improper. Since there was no evidence establishing what gauge of wire was used in the repair, such cross-examination would have been improper.