350 S.E.2d 692

**CRANE & EQUIPMENT RENTAL COMPANY, INC.**

v.

**PARK CORPORATION.**

**and**

**LOUISIANA LIGHT & POWER COMPANY, et al.,**

v.

**PARK CORPORATION.**

No. 16748.

Supreme Court of Appeals
of West Virginia.

July 16, 1986.

Rehearing Denied Dec. 18, 1986.

W.E. Mohler, Charleston, for appellant.

Kay, Casto & Chaney, Michael Bonasso and Harry Bell,· Charleston, for appellee.

PER CURIAM:

This is an appeal by Park Corporation, defendant below, from an order entered in the Circuit Court of Kanawha County upon a jury verdict in a negligence action.

The appellant owns the Charleston Ordnance Center and a nearby loading dock on the Kanawha River in South Charleston, Kanawha County. Appellee, Southwestern Engineering Company (Southwestern), leased a building at the ordnance center. Incorporated in Southwestern's lease was a non-exclusive easement for the use of the loading dock. The dock was constructed of concrete supported by three steel pilings or cells that had been driven to solid rock on the river bed, filled with rocks, bricks, and sand and then capped with 30 inches of concrete. There were wedges of unspecified material (apparently concrete) in between each of the cells, and a concrete pad apparently covered the entire area of the dock.*

Southwestern built a condenser for Louisiana Power and Light Company and Ebasco Services, Inc. for use in a power plant in the State of Louisiana, and contracted with appellee Crane & Equipment Rental Company (Crane & Equipment) to load the condenser, which weighed 161.5 tons, into a river barge.

Crane & Equipment used two cranes with a combined capacity of 300 tons to move the condenser from the dock to the barge. Each crane had four outriggers, which, at the start of the loading operation, rested on mats constructed of six timbers, eight by eight inches square and twelve feet long.

The condenser was hoisted by connecting it to a leveling beam, each end of which was hooked to a crane cable. The crane operators maneuvered the condenser past the cranes' outriggers and out over the barge. Each crane was attended by an oiler who had the responsibility of keeping the crane greased and watching the outriggers. If an outrigger lifted off the mat, this was a sign of an overloaded or unbalanced condition and the oiler was to communicate the problem to the operator. The oiler also had the job of relaying signals to the operator from the person who was supervising the loading operation.

The operators were given a signal to lower the condenser toward the barge. This was done by slowly releasing the crane cable. As the condenser approached the top of the barge, the supervisor gave a signal to stop. He noticed that the barge had drifted about a foot away from the dock and was no longer properly positioned to receive the condenser. The loading operation was suspended while someone went to find a "come along" to winch the barge back to the dock. A few minutes later, while the condenser still hovered above the barge, the crane on the downriver end of the dock started to tip toward the river. The operator of the upriver crane, who could not see the downriver crane, observed the condenser swing out away from the dock. He also felt his crane starting to tip toward the river. He released the brake holding the cable which caused the load to fall onto the barge. With the load released, the crane dropped back onto the dock. Meanwhile, the operator of the downriver crane had set the brake and jumped out of the operator's compartment. He returned to his crane a few minutes later and eased it back down onto the mats by slowly releasing the cable.

Claude Henson, Crane & Equipment's employee who supervised the loading of the condenser, inspected the dock before and after the accident. He testified that he observed "fresh mark" on the downriver piling indicating that a portion of the concrete dock settled two and one-half inches during the loading operation.

There was additional testimony from Henson and other witnesses that the dock had gradually sunk six to eight inches in the preceding four or five years and that the top surface of the concrete was cracked. At least two other companies that leased facilities at the ordnance center also used the loading dock. Crane & Equipment had previously used the dock to load condensers for Southwestern. Both Crane & Equipment and Southwestern officials were aware of the prior settling and cracking. Within a few days after the

---

* A complete and accurate description of the dock and the cranes is hampered by the fact that we have not been provided with photographs and diagrams that were extensively used at trial.

accident, Crane & Equipment used the dock, without incident, to load six condensers onto river barges.

Southwestern and the two power companies brought an action against the appellant to recover damages for injury to the condenser. Crane & Equipment also brought an action against the appellant for injuries to the crane. In both actions, it was alleged that the appellant negligently failed to warn the plaintiffs of defects in the dock, negligently designed, constructed, and maintained the dock, and breached express and implied warranties that the dock was fit for use by heavy equipment.

The two actions were consolidated, and following a trial, the jury found that the defendant was 90% negligent, plaintiff Crane & Equipment was 10% negligent, and plaintiff Southwestern was not negligent.

The appellant moved for a directed verdict at the close of the plaintiffs' case and again at the close of all the evidence. The motions were denied. The appellant also made a post-trial motion for judgment notwithstanding the verdict, which was also denied. The appellant now contends that the trial court erred in failing to direct a verdict.

■ Syllabus point 5 of *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260, 75 A.L.R.3d 315 (1973), provides: "Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." *See also* syl. pt. 3, *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983). As noted in *Kane v. Corning Glass Works*, 175 W.Va. 77, 80, 331 S.E.2d 807, 810 (1984) (McGraw, J. dissenting), the rule in *Wager v. Sine* is derived from the well-established principle that:

Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to the plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. (citations omitted)

■ With particular reference to negligence actions, we have said:

'To recover in an action based on negligence, the plaintiff must prove that the defendant was guilty of primary negligence and that such negligence was the proximate cause of the injury of which the plaintiff complains and if the plaintiff fails to establish such primary negligence the court should direct a verdict for the defendant.' Point 1, Syllabus, *Davis v. Cross*, 152 W.Va. 540 [164 S.E.2d 899 (1968)].

Syl. pt. 1, *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973); *see also* syl. pt. 2, *Rowan v. Barker*, 175 W.Va. 492, 334 S.E.2d 630 (1985).

■ We have carefully reviewed the trial record of the case before us and conclude that the evidence presented was insufficient, even when viewed in the light most favorable to the plaintiffs, to avoid a directed verdict. It is undisputed that the plaintiffs' property was injured in the accident. However, the fact that an injury occurs is not sufficient, by itself, to establish a prima facie case of negligence. "The bare fact of an injury standing alone, without supporting evidence as to the cause thereof, is not sufficient to justify an inference of negligence." Syl. pt. 1, *Walton v. Given*, 158 W.Va. 897, 215 S.E.2d 647 (1975).

■ The jury could reasonably infer from the evidence that the dock supporting the downriver crane settled about two inches during the loading operation. However, there is an absence of evidence as to what might have caused the dock to settle. It was therefore improper for the trial court to permit the jury to engage in speculation on the cause of the accident. " 'A jury will not be permitted to base its findings of fact upon conjecture or speculation.' Point 1, Syllabus, *Oates v. Continental Insurance Company*, 137 W.Va. 501 [72 S.E.2d 886 (1952)]." Syl. pt. 3, *Adams v. Sparacio, supra.*

Without any evidence as to what caused the dock to shift or settle, the jury's finding that the defendant's negligence proximately caused the plaintiffs' injuries had to have been based solely on speculation. "To permit a recovery of damages based on negligence the negligence of the defendant must be the proximate cause of the injury for which the plaintiff seeks to recover." Syl. pt. 3, *Pygman v. Helton*, 148 W.Va. 281, 134 S.E.2d 717 (1964). Under these circumstances, the trial court erred in not directing a verdict in favor of the defendant.

Our determination that the case should not have been submitted to the jury makes it unnecessary for us to address the remaining errors assigned by the appellant.

The final order of the Circuit Court of Kanawha County is reversed and this case is remanded for entry of an order directing a verdict in favor of the defendant·Park Corporation.

Reversed and Remanded.

McHUGH, Justice, dissenting:

I respectfully dissent from the majority's invasion of the province of the jury.

'Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.' Syl. pt. 1, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981), *quoting,* syl. pt. 5, *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964).

Syl. pt. 6, *McAllister v. Weirton Hospital Co.,* 173 W.Va. 75, 312 S.E.2d 738 (1983).

I am of the opinion there was sufficient evidence presented from which a reasonable juror could infer that Park Corporation was negligent in failing to maintain the dock in a safe condition, and that its negligence proximately caused the plaintiffs' property to be injured. The jury was properly instructed on the questions of negligence and proximate cause. The trial judge did not err in denying the plaintiffs' motions for a directed verdict.

I am authorized to state that Justice McGRAW joins me in this dissent.