356 S.E.2d 18

**Willard E. PRITCHETT**

v.

**AFFINITY MINING COMPANY.**

No. 17183.

Supreme Court of Appeals of
West Virginia.

April 1, 1987.

Thomas K. Patterson, Thornhill, Kennedy & Vaughan, Beckley, for appellant.

Charles M. Surber, Jr., Larry W. Blalock, Jackson, Kelly, Holt & O'Farrell, Charleston, for appellee.

PER CURIAM:

This is an appeal by William E. Pritchett from an order entered by the Circuit Court of Raleigh County on July 16, 1985. That order granted a motion by the Affinity Mining Company for a directed verdict in the appellant's case for damages for wrongful discharge from employment. On appeal the appellant claims that the trial court erred in directing the verdict and that the court should have allowed the jury to deliberate in the case. We agree, and we reverse the decision of the Circuit Court of Raleigh County.

On September 15, 1980, the appellant, while working as a foreman for Eastern Associated Coal Company, the parent of Affinity Mining Company, sustained a broken jaw in the course of and as a result of his employment. For the injury he filed a Workers' Compensation claim against Eastern Associated Coal Company.

In September, 1981, after recovering from his injury, the appellant commenced working as a service foreman for Affinity Mining Company. While working in that position, he sustained two minor work-related injuries in August and September, 1982. For one of those injuries he filed a Workers' Compensation claim and received payment.

After filing his claims for workers' compensation for the 1980 injury and for the less serious 1982 injury, the appellant was promoted by Affinity Mining Company from a grade 1 to a grade 3 service foreman. That promotion entitled the appellant to an increase in pay. However, according to the appellant, because of paper-

work delays, Affinity Mining Company did not immediately begin paying him the increase which was due. Instead, he was instructed by the assistant mine foreman to report that he had worked certain hours that he had not actually worked to compensate for the pay differential between a grade 1 and grade 3 foreman. According to the appellant, he followed this practice of turning in extra, non-worked time until the paper work officially changing his pay scale was completed.

In November, 1982, the appellant was again promoted, from shift service foreman to day shift production foreman. Again there was a delay in upgrading the payroll for the promotion, and the appellant again apparently turned in overtime reports for work which he did not actually perform to compensate the difference in pay.

While on the day shift, the appellant attended a hearing in conjunction with his workers' compensation claim for the September, 1980, accident. According to the appellant, upon returning from the hearing he was confronted by the general mine foreman, David Thompson, who, according to the appellant, suggested that he should not be receiving full salary if he was disabled.

Subsequently, the appellant was told by the assistant mine superintendent to report to the office of the mine superintendent on Monday, August 1, 1983. At the August 1, 1983, meeting, the mine superintendent called upon the appellant to justify every overtime shift he had turned in since January, 1983, approximately fourteen overtime shifts. The appellant indicated that he had worked for the time and indicated that he deserved pay for it. At the conclusion of the meeting, the mine superintendent told the appellant that he had the option either of quitting or that he would be fired and never get a job in the State of West Virginia mining coal again. The appellant refused to quit, and shortly thereafter he was fired.

Subsequently, the appellant filed the complaint instituting the proceeding now before the Court. In his complaint he alleged that he had been wrongfully charged with fraudulently turning in time sheets for hours which he had not actually worked. He claimed that "this wrongful discharge was motivated by an improper purpose on the part of the defendant, namely to punish the plaintiff for pursuing a workers' compensation claim against defendant's parent company, Eastern Association Coal Corp."

A trial was held in the case on February 25, 1985. In the course of the trial the appellant testified regarding the face injury which he had sustained in the course of his employment on September 15, 1980. He stated that while he was off work for the injury he heard rumors that he would be laid off. He subsequently returned to work, and on the day of his return he was informed by his mine foreman that he was laid off. He then found employment with a different mining company, but subsequently he was called back to work as a foreman by Eastern Associated Coal Company. He explained that in that position he was promoted, and he admitted that he had filed for overtime which he did not actually work, but indicated that he did so under instructions so that he could be paid, in effect, for the work he was doing until the time promotional paper work had been completed at the Pittsburgh office of his employer.

The appellant testified that after his promotion he pursued his workers' compensation claim, and that, after attending a hearing in conjunction with the September 15, 1980, claim, he was confronted by his mine foreman, Dave Thompson. The appellant testified that at that time the mine foreman asked him what he was going to receive for his compensable injury. The appellant told him probably ten or fifteen percent. The foreman then said: "You mean we're paying you full salary and you're 89%?" The appellant didn't respond because he didn't want to make the foreman mad, so he just walked off.

On cross-examination, the appellant admitted that he had sustained four workers' compensation injuries and that he was called back to work after two of the injuries. He also admitted that he was promot-

ed from a class 1 to a class 3 service foreman after the fourth injury. His employer did not oppose any of the compensation claims, and the appellant admitted that no official of Affinity Mining Company stopped him from filing a workers' compensation claim.

At the conclusion of the presentation of the appellant's case, the Affinity Mining Company moved for a directed verdict. Affinity argued that at the close of the appellant's case there was practically no evidence indicating that Affinity had discharged the appellant because he had filed a workers' compensation claim. Affinity further argued that the appellant had admitted that he had filed four workers' compensation claims and that he had been promoted after the filing of the claims. Also Affinity argued that the last claim was filed some nineteen months prior to the appellant's discharge. Affinity took the position that the remark relating to the claimant being only partially able to work, made by the claimant's foreman, was made in a "kidding" fashion and was not tied into the appellant's case.

After taking the matter under advisement, the circuit court on the following day granted Affinity Mining's motion for a directed verdict. It is from that ruling that the appellant now appeals.

This Court set forth a fundamental rule relating to directed verdicts in syllabus point 5 of *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973):

> Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed.

*See Ashland Oil, Inc. v. Donahue,* 164 W.Va. 409, 264 S.E.2d 466 (1980).

■ In a number of recent cases this Court recognized that the rule that an employer has an absolute right to discharge an at-will employee must be tempered by the principle that where the employer's motivation for the discharge is in contravention of some substantial public policy principle, then the employer may potentially be liable to the employee for damages occasioned by the discharge. *See Stanley v.* *Sewell Coal Company,* 169 W.Va. 72, 285 S.E.2d 679 (1982); *Shanholtz v. Monongahela Power Company,* 165 W.Va. 305, 270 S.E.2d 178 (1980); *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). In syllabus point 2 of the *Shanholtz* case, the Court ruled that:

> It is a contravention of public policy and actionable to discharge an employee because he has filed a workmen's compensation claim against his employer.

In the case presently under consideration, the principal allegation made by the appellant in his complaint is that his discharge by Affinity Mining Company was motivated by a desire on the part of the mining company to punish him for pursuing a workers' compensation claim against Affinity's parent company, Eastern Associated Coal Corporation. During the trial of the case, the appellant's testimony indicated that while he was off work because of his 1980 compensable injury he heard rumors that he would be laid off when he returned to work, the implication being that his employer resented his being off work because of his compensable injury. The appellant also testified that his foreman made derogatory remarks after he attended a compensation hearing and suggested that he would be adjudged partially disabled.

■ While Affinity Mining Company strenuously argued before the trial court that the foreman's remark was made in a joking way and that other evidence could be construed to demonstrate that the appellant's workers' compensation claim played no role in the company's dismissal of him, this Court believes that the testimony and the inferences which arise from it could potentially be viewed by a jury in differing ways. Clearly, if a jury concluded from it that the appellant was dismissed because he had filed a workers' compensation claim, then the appellant would have a valid cause of action against Affinity Mining Company under the ruling set forth in syllabus point 2 of *Shanholtz v. Monongahela Power*

*Company, supra.*[1]

██ When the evidence in this case is construed in such a way as to resolve all reasonable doubts and inferences in favor of the appellant, as must be done upon a motion for directed verdict, this Court believes that it indicates that a directed verdict against the appellant would be improper. The Court also believes that in directing a verdict against the appellant, the trial court erred.

The judgment of the Circuit Court of Raleigh County is accordingly reversed, and this case is remanded for trial.

Reversed and remanded.

---

1. In addition to arguing that his discharge was wrongful because it was motivated by the employer's desire to punish him for pursuing a workers' compensation claim, the appellant suggests that he was wrongfully discharged because he turned in incorrect overtime sheets under the instructions of a supervisor. During trial the appellant testified that when asked by his employer for an explanation of why he had turned in sheets for time he had not actually worked, he stated: "At that time I gave him an explanation I worked for it and thought I deserved it." When asked whether he informed the mine superintendent that Jim Mills had specifically told him to turn in overtime, he replied: "No, sir. I thought it was going to be a butt chewing session. I thought it would just completely blow off." After suggesting at another point that he had been told to turn in the sheets, the superin-

tendent asked who had instructed him to do so. The appellant testified at trial: "I wouldn't answer him."

This Court believes that an inquiry into the correctness of time sheets is a proper inquiry by an employer. Although, at trial, the appellant suggested that the sheets were improper because of instructions which he had received from a superior, the circumstances were not presented to the employer at the time the inquiry was conducted even though the appellant was afforded an opportunity to present his case.

This Court believes that factually the appellant failed to show at trial that he was fired by the employer for an act which the employer knew was authorized, and the Court also believes that the appellant failed to identify a public policy which the employer contravened in conjunction with the time-sheet inquiry.