383 S.E.2d 770

**MORRIS ASSOCIATES, INC., et al.**

v.

**Max E. PRIDDY.**

**No. 18690.**

Supreme Court of Appeals of
West Virginia.

Aug. 2, 1989.

Warren A. Thornhill, III, Beckley, for Morris Associates.

Clyde A. Smith, Jr., Lynch, Mann, Smith & Bibb, Beckley, for Max E. Priddy.

MILLER, Justice:

This is an appeal by the plaintiffs below, Morris Associates, Inc., from a final order of the Circuit Court of Raleigh County ordering a new trial on all issues. The plaintiffs contend that the trial court should have ordered a new trial only on the issue of damages. We do not agree, and, accordingly, the judgment of the trial court is affirmed.

In 1974, the defendant below, Max E. Priddy, purchased a parcel of land from Morris Associates. The defendant installed a six-foot diameter culvert on this property, over which he placed a fill to level the property so that it could be used as a

parking lot. The defendant purchased another parcel of land from Morris Associates in 1979 which was adjacent to the property he purchased in 1974. The second parcel of land he purchased had a five-foot diameter culvert which led into the six-foot culvert on the first parcel of land, both of which were covered with fill.

In 1980, the area was flooded by a heavy rainfall causing damage to the property owned by Morris Associates and the defendant. Morris Associates filed a civil action against Mr. Priddy for damages caused by the flood. The defendant's insurance company settled the matter and Morris Associates executed a release.

In 1984, the defendant purchased a third parcel of land from Morris Associates and some five or six feet of fill was also placed on this property to elevate it to the same level as the second parcel.

In 1985, another flood occurred causing damage to the plaintiffs' property. On August 20, 1985, the plaintiffs filed a complaint against the defendant alleging that the flooding was caused by the fill the defendant had placed on his property. A three-day trial was conducted and, at the conclusion, the trial judge determined that the defendant was liable for the damage to the plaintiffs' property as a matter of law. The case was submitted to the jury only on the issue of damages and the jury returned a verdict totaling $110,428.70. The plaintiffs moved for a new trial solely on the issue of damages and the defendant moved for a new trial on all issues. The trial judge granted the defendant's motion and the plaintiffs appealed.

The sole issue is whether, upon consideration of the evidence, the trial court erred in awarding a new trial on all of the issues. We stated in Syllabus Point 8 of

*Simmons v. City of Bluefield,* 159 W.Va. 451, 225 S.E.2d 202 (1976), *overruled on other grounds, O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977):

> "A new trial may be granted on all or part of the issues, and where the question of liability has been resolved in favor of the plaintiff leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages."

*See also Biddle v. Haddix,* 154 W.Va. 748, 179 S.E.2d 215 (1971); *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877 (1964).

In the instant case, the issue of liability was not resolved by the jury because the trial judge granted the plaintiffs' motion for a directed verdict on this issue.[1] The trial court, however, recognized in its opinion letter dated January 22, 1988, that issues other than damages should have been submitted to the jury for decision.

An order of the trial court awarding a new trial on all the issues will not be reversed by this Court unless it is clearly unwarranted. We stated in Syllabus Point 4 of *Kesner v. Trenton,* 158 W.Va. 997, 216 S.E.2d 880 (1975), that:

> " 'The judgment of a trial court in setting aside a verdict and awarding a new trial is entitled to peculiar weight and its action in this respect will not be disturbed on appeal unless plainly unwarranted.' *Syllabus* point 3., *Young v. Duffield,* 152 W.Va. 283, 162 S.E.2d 285 (1968)."

The plaintiffs contend that where evidence presented during the trial establishes liability, the trial judge should award a new trial only on the issue of damages. The defendant argues that the issue of liability was improperly taken from the province of

---

1. We have consistently stated the rule from Syllabus Point 5 of *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973), that: "Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." *See also* Syllabus Point 1, *Criss v. Criss,* 177 W.Va. 749, 356 S.E.2d 620 (1987); Syllabus, *Pritchett v. Affinity Mining Co.,* 177 W.Va. 679, 356 S.E.2d 18 (1987); Syllabus Point

3, *Covey v. Fields,* 177 W.Va. 481, 354 S.E.2d 413 (1987); Syllabus Point 2, *Arcuri v. Great American Ins. Co.,* 176 W.Va. 211, 342 S.E.2d 177 (1986); Syllabus Point 1, *Rowan v. Barker,* 175 W.Va. 492, 334 S.E.2d 630 (1985); Syllabus Point 3, *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983); Syllabus Point 2, *Ashland Oil, Inc. v. Donahue,* 164 W.Va. 409, 264 S.E.2d 466 (1980).

the jury and, therefore, a new trial should be conducted on all the issues.

■ We find that the trial court did not abuse its discretion in granting a new trial on all issues involved in this case. The question of whether Mr. Priddy acted reasonably in placing a fill over the culverts located on his property, thereby causing the water to dam up and overflow onto the plaintiffs' property, was a question for the jury.

Admittedly, our law with regard to a landowner's liability for altering the surface of his land to change the course or amount of surface water that flows off the land onto an adjoining landowner's property is not a model of clarity.[2]

In one of our earliest cases, *Jordan v. City of Benwood*, 42 W.Va. 312, 26 S.E. 266 (1896), this Court made a fairly extensive review of the law in this area and, in particular, the two leading and disparate doctrines, i.e., the civil and the common law rule. We stated that the civil law rule, as "expressed in the Code Napoleon," would not allow the owner of the lower ground to stop the natural flow of water from the higher ground nor would it allow the owner of the higher ground to aggravate the flow of the water to the lower ground. 42 W.Va. at 315, 26 S.E. at 267. Under this rule, neither owner can interfere with the flow of surface water so as to damage the property of the other without being subject to liability. The civil rule rests on the maxim: "So use your own property or right that you do not injure another." We explained that the common law rule, also referred to as the "common-enemy" rule, would allow "each owner to fight surface water as he chooses." 42 W.Va. at 315, 26 S.E. at 267. We stated that an owner under this rule "may use it all, divert it away from the lower land, may prevent its

invasion of his own land, and thus dam it up on his neighbor's land." 42 W.Va. at 315, 26 S.E. at 267. *See generally* 78 Am. Jur.2d *Waters* § 119 (1975).

Additionally, in *Jordan*, we noted that many courts, recognizing the harshness of the common law rule, created an exception. This exception, which we adopted, provides that a landowner "cannot by ditches, drains or other artificial channels collect surface waters and cast it in a body or mass upon a lot. If [the landowner] does so, it is liable to the lot owner in damages." Syllabus Point 3, in part, *Jordan v. City of Benwood, supra.*[3]

Thus, under *Jordan*, a landowner could alter the grade of his property and, if this changed the manner in which surface waters flowed from his property, he was not liable. However, the landowner could not, by ditching, drains, or other artificial means, cause the surface water to be cast upon another's property.

*Jordan* did not discuss our earlier case of *Henry v. Ohio River R. Co.*, 40 W.Va. 234, 21 S.E. 863 (1895). In *Henry*, without much discussion, we held that the railroad was liable for constructing an embankment which blocked a culvert on the plaintiff's property, thereby causing water to back up on his land. We appeared to apply the civil rule:

"That, though a work of improvement, like a railroad, is lawful and under authority, yet, if damage result to an individual by overflow of water by reason of negligent construction, he can recover, is well settled. *Gillison v. City of Charleston*, 16 W.Va. 282; *Knight v. Brown*, 25 W.Va. 808; *Taylor v. Railroad Co.*, 33 W.Va. 39 (10 S.E.Rep. 29). It is only an application of the maxim: "So use your own property or right that you do not injure another.' I under-

---

**2.** We defined surface water in Syllabus Point 2, in part, of *Neal v. Ohio River R.R. Co.*, 47 W.Va. 316, 34 S.E. 914 (1899):

"Surface water is water of casual, vagrant character, oozing through the soil, or diffusing and squandering over or under the surface, which, though usually and naturally flowing in known direction, has no banks or channel cut in the soil: coming from rain and

snow, and occasional outbursts in time of freshet, descending from mountains or hills, and inundating the country; and the moisture of wet, spongy, springy, or boggy land."

**3.** While *Jordan* dealt with the activities of a municipality in grading a street, the Court recognized that the same law applied to private landowners. 42 W.Va. at 318, 26 S.E. at 268.

stand, indeed, that in this state, negligence is not an essential to recovery, but only damage. *Gillison v. City of Charleston,* 16 W.Va. 282; *Johnson v. Parkersburg,* [16 W.Va.] at 402. But, where the landowner has been compensated, negligent construction is required to maintain action." 40 W.Va. at 245, 21 S.E. at 867.

In *Manley v. Brown,* 90 W.Va. 564, 111 S.E. 505 (1922), we returned to the common law rule as modified, although we did not cite any of our earlier cases or refer to a general rule. In *Manley,* a landowner constructed a ditch which conveyed surface waters onto an adjoining owner's property causing a stone boundary wall to collapse. We concluded in Syllabus Point 1:

> "While an owner of real estate may construct thereon a drain for the purpose of gathering and conveying thereover the surface water, he will be liable for damages sustained by an adjoining owner, from the washing away of his soil by the erosion of the water in the ditch, as well as for damages to any structures upon the land of such adjoining owner, which are injured by being deprived of their subjacent support by the erosion of the water in such drain."

In *Mason v. City of Bluefield,* 105 W.Va. 209, 141 S.E. 782 (1928), again without much discussion of the law, we held the city liable for altering the grade of a street. This alteration caused surface water from connecting streets to collect and be cast onto the plaintiff's lot. Under *Jordan,* an alteration in the grade of the property is not actionable unless artificial channels are constructed to divert surface waters. The Court apparently felt that the collection of water from other streets created an artificial diversion and concluded in Syllabus Point 1: "A city is liable in damages to a property owner in collecting surface water and casting it in a mass or body on his land by raising the grade of an adjoining street."

Our latest case, *Gallagher v. City of Westover,* 167 W.Va. 644, 280 S.E.2d 330 (1981) (per curiam), involved the city's construction of streets and storm sewers above and behind the plaintiff's property, which caused surface water to be cast on the plaintiff's property and to erode the foundation of a garage. We affirmed a judgment against the city, using Syllabus Point 3 of *Jordan.*[4]

■ An increasing number of courts have come to the conclusion that both the civil and the common law rules, even as modified, are too inflexible to meet the demands of an urban society. The development of land for commercial, industrial, and housing complexes requires alteration of the property. If this is to occur, an owner must be able to take reasonable steps to develop property without being subjected to suit. In the development of property that is not entirely level, there is generally a need for artificial drainage to handle surface waters and, by reasonably using such devices, liability should not necessarily result. These considerations motivated the Connecticut Supreme Court in *Page Motor Co., Inc. v. Baker,* 182 Conn. 484, 438 A.2d 739 (1980), to abandon its modified common law theory and adopt a reasonable use test, which it phrased as follows:

> "Generally, under the rule of reasonable use, the landowner, in dealing with surface water, is entitled to take only such steps as are reasonable, in light of all the circumstances of relative advantage to the actor and disadvantage to the adjoining landowners, as well as social utility. Ordinarily, the determination of such reasonableness is regarded as involving factual issues to be determined by the trier." 182 Conn. at 488–89, 438 A.2d at 741.

---

**4.** In *Tierney v. Earl,* 153 W.Va. 790, 172 S.E.2d 558 (1970), we stated without any citation of authority or discussion that the trial court was correct in ordering the removal of dirt because the "defendant Earl had altered the grade of the sixteen-foot strip so as to block the natural flow of surface waters and cause a flooding condition on the Tierney lot." 153 W.Va. at 794, 172 S.E.2d at 560. This has caused us to be categorized as a civil rule state. *See* Annot., 93 A.L.R.3d 1193, 1209, 1225 (1979). *See also* 5 R. Clark, *Waters and Water Rights* § 456.2 at 575 (1972).

*See also Weinberg v. Northern Alaska Development Corp.,* 384 P.2d 450 (Alaska 1963); *Keys v. Romley,* 64 Cal.2d 396, 50 Cal.Rptr. 273, 412 P.2d 529 (1966); *Weldin Farms, Inc. v. Glassman,* 414 A.2d 500 (Del.Super.1980); *Rodrigues v. State,* 52 Hawaii 156, 472 P.2d 509 (1970); *Klutey v. Commonwealth of Kentucky, Dep't of Highways,* 428 S.W.2d 766 (Ky.1967); *Tucker v. Badoian,* 376 Mass. 907, 384 N.E.2d 1195 (1978); *Bassett v. Salisburg Mfg. Co.,* 43 N.H. 569 (1862); *Pendergrast v. Aiken,* 293 N.C. 201, 236 S.E.2d 787 (1977); *Armstrong v. Francis Corp.,* 20 N.J. 320, 120 A.2d 4 (1956); *Jones v. Boeing Co.,* 153 N.W.2d 897 (N.D.1967); *Butler v. Bruno,* 115 R.I. 264, 341 A.2d 735 (1975); *Mulder v. Tague,* 85 S.D. 544, 186 N.W.2d 884 (1971); *Houston v. Renault, Inc.,* 431 S.W.2d 322 (Tex.1968); *Sanford v. University of Utah,* 26 Utah 2d 285, 488 P.2d 741 (1971); *State v. Deetz,* 66 Wis.2d 1, 224 N.W.2d 407 (1974); 78 Am.Jur.2d *Waters* § 122 (1975); Annot., 93 A.L.R.3d 1193 (1979).

In a related area of water law, that of riparian rights, we have always utilized the doctrine of reasonable use, as we explained in Syllabus Point 4 of *Roberts v. Martin,* 72 W.Va. 92, 77 S.E. 535 (1913): "The right of a lower riparian owner to the natural flow of the stream is subject only to a reasonable use of the water by the upper riparian owners as it runs through their lands before reaching his." *See also Snyder v. Callaghan,* 168 W.Va. 265, 284 S.E.2d 241 (1981); *Halltown Paperboard Co. v. C.L. Robinson Corp.,* 150 W.Va. 624, 148 S.E.2d 721 (1966); *McCausland v. Jarrell,* 136 W.Va. 569, 68 S.E.2d 729 (1951).

We do not believe that our cases involving the drainage of surface waters demonstrate an inflexible adherence to either the common or civil rule even as modified. Rather, they point to the conclusion that we have approached each case on its individual facts with a view toward finding if a reasonable use was being made of the property. It is true that we have not articulated a reasonable use standard as such, but we believe the Connecticut court's formulation in *Page Motor Co., Inc. v. Baker, supra,* is appropriate and we adopt it. To the extent that *Jordan v. City of Benwood, supra,* differs, it is overruled.

Within the context of this case, we believe the trial court was correct in holding that the question of liability was a jury issue. In view of the foregoing, we affirm the judgment of the Circuit Court of Raleigh County.

Affirmed.