600 S.E.2d 576

**Mindy and Billy McCORMICK, Plaintiffs Below, Appellants,**

**and**

**David CARROLL, Plaintiff Below, Appellant,**

v.

**WALMART STORES, INC., a Delaware corporation; RCDI Construction, Inc., a West Virginia corporation; West Virginia Department of Transportation, Division of Highways, an agency of the state government of the State of West Virginia; and the Town of Lewisburg, West Virginia, a municipality, Defendants Below, Appellees.**

No. 31396.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2004.

Decided May 7, 2004.

Dissenting Opinion of Justice Maynard June 30, 2004.

Maynard, C.J., filed a dissenting opinion.

Mark D. Moreland, Esq., Charleston, for Appellants.

Roger A. Wolfe, Esq., Jackson & Kelly, Charleston, for Appellee Walmart Stores, Inc.

Daniel R. Schuda, Esq., Robert A. Lockhart, Esq., Schuda & Associates, Gary E. Pullin, Esq., Pullin, Fowler & Flanagan,

Charleston, for Appellee RCDI Construction, Inc.

Ancil G. Ramey, Esq., Nora Clevenger Price, Esq., Steptoe & Johnson, Charleston, for Appellee Town of Lewisburg.

Christopher A. Brumley, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, for Freeland–Clinkscales & Kauffman, Inc.

PER CURIAM:

This case is an appeal from the Circuit Court of Greenbrier County's dismissal of the appellee Town of Lewisburg ("the Town"), a municipality and a political subdivision of the State of West Virginia, as a defendant from a lawsuit, on the grounds that the plaintiffs' second amended complaint failed to state a claim against the Town for which relief could be granted. The plaintiffs in the lawsuit in question (and appellants in this Court) are Mindy and Billy McCormick ("the McCormicks") and David Carroll. We reverse the circuit court's granting of a motion to dismiss.

## I.

According to the appellants' complaint, the appellants own a parcel of land within the boundaries of the Town, and in about 1994, Walmart Stores, Inc. ("Walmart") and RCDI Construction, Inc. ("RCDI") began acquiring real estate in the vicinity of the appellants' property to build a Walmart Supercenter.

The appellants allege that the Town owns real property and has constructed and maintains stormwater drainage collection systems that are located near the Supercenter property. The appellants further allege that after the Supercenter was built, the appellants' property began to suffer severe damage caused by the incursion onto their property of stormwater that in part originates on and from the real property and water collection and drainage systems that are owned and operated by the Town.

The appellants allege that prior to the construction of the Supercenter, the bulk of this stormwater drainage from the Town's property and drainage systems did not reach the appellants' property—but that since the Supercenter was constructed, the Town has managed its property and drainage systems in such a way that this stormwater drainage now flows across and through the Supercenter property and onto the appellants' property.

The appellants also state in their complaint that the Town has failed to properly control stormwater from the Town's property and its drainage collection systems and that such failure has caused injury to the appellants; that the Town assured the appellants that it would remedy these injurious conditions, and that the plaintiffs relied on this assurance, but the Town did not take action to fulfill this assurance; and that—along with Walmart, RCDI, the West Virginia Division of Highways, and FCK, an engineering company—the Town is legally responsible for the injuries to the appellants and their real property that are caused by the stormwater discharges that flow onto the appellants' property.

## II.

The circuit court's dismissal in this case was granted prior to discovery having taken place and without reference to matters outside of the complaint—as per Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure*, which states in pertinent part:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, *(6) failure to state a claim upon which relief can be granted,* (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party

may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(Emphasis added.)

■ Syllabus Points 1 and 2 of *Holbrook v. Holbrook,* 196 W.Va. 720, 474 S.E.2d 900 (1996) *(per curiam)*, state:

1. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

2. "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99 [102], 2 L.Ed.2d 80 (1957)." Syl. pt. 3, *Chapman v. Kane Transfer Company,* 160 W.Va. 530, 236 S.E.2d 207 (1977).

We also stated in *Holbrook:*

As this Court acknowledged in *John W. Lodge Distributing Co., supra,* 161 W.Va. at 606, 245 S.E.2d at 159: "The standard which plaintiff must meet to overcome a Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it. The plaintiff's burden in resisting a motion to dismiss is a relatively light one."

196 W.Va. at 726, 474 S.E.2d at 906.

The plaintiffs, now appellants, pled separate causes of action against all of the defendants sounding in trespass, nuisance, negligence, interference with business relations, outrage, and infliction of emotional distress.

*W.Va.Code,* 29–12A–4(c)(3) [1986] states that:

Political subdivisions are liable for ... loss to ... property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance.

■ Stormwater drainage systems are "aqueducts" for purposes of this section. *Calabrese v. City of Charleston,* 204 W.Va. 650, 515 S.E.2d 814 (1999).

### A.

The Town initially argues that because any stormwater from Town property and stormwater drainage systems first passes through property owned by Walmart before arriving on the appellants' property, the Town cannot have any liability for injuries caused by that drainage—no matter how complicit, negligent, or unreasonable the conduct of the Town is or has been in connection with causing that water to arrive on the appellants' property.

■ However, the claim that the existence of an "intervening" piece of property in the path or course of travel of an injurious nuisance or trespass immunizes one who originates or contributes to a trespass or nuisance from possible liability to non-adjacent property is untenable. For example, a person who wrongfully discharges pollutants into a stream may be liable for injuries to downstream property owners and users—despite the fact that there are intervening riparian owners—if the original wrongful conduct was a proximate cause of the injuries. *See, e.g., Carter v. Monsanto Co.,* 212 W.Va. 732, 575 S.E.2d 342 (2002).

In this regard, the principles to be applied to the instant case are the same as those that were applied in *Whorton v. Malone,* 209 W.Va. 384, 549 S.E.2d 57 (2001), a case with a somewhat different factual pattern.

In *Whorton,* a landowner claimed immunity from nuisance liability for stormwater that was discharged from his property onto adjoining property—because the water allegedly "originated" on another piece of property. We stated in *Whorton* that "[i]t is an inescapable fact of nature that, surface water 'origi-

nates' elsewhere. It either falls from the sky, comes up from a spring, or flows from a higher grade to a lower one. But whether it comes from a cloud, spring, or an upstream neighbor, once that water arrives upon a given property, that property owner 'is entitled to take only such steps as are reasonable,' in diverting it." *Id.*, 209 W.Va. at 389, 549 S.E.2d at 62.

Syllabus Points 6 and 7 of *Whorton v. Malone* state:

6. When a plaintiff alleges that a defendant has caused or allowed surface water to damage the plaintiff, the mere fact that the water does not originate on the land of the defendant, does not, in and of itself, make the defendant's conduct "reasonable" under the test established in *Morris Assocs., Inc. v. Priddy,* 181 W.Va. 588, 383 S.E.2d 770 (1989).

7. In the absence of a valid waiver or other contractual arrangement, altering the natural flow or drainage of surface water upon one's land such that the water causes damage to another party is not "reasonable" merely because the person altering the flow of water sought to protect his or her own property and did not intend to harm any other party.

■ Although the facts are somewhat different, the principles that guided the decision authored by Justice McGraw in *Whorton* are applicable in the instant case. A property owner may be liable in nuisance for injuries caused by stormwater that leaves the owner's property—and the property owner is not *per se* immunized from such potential liability by either the fact that the stormwater previously arrived on the owner's property from another property, or by the fact that the stormwater subsequently traveled across another property before causing the injury in question. Based on these well-established principles, the Town's argument on this point must fail.

### B.

■ Additionally, the Town argues that any of its conduct with relation to the allegedly injurious effects on the appellants of stormwater from the Town's drainage systems and property is immunized by *W.Va.* *Code,* 29–12A–5(a) [1986], which states in pertinent part:

A political subdivision is immune from liability if a loss or claim results from: ... (9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority[.]

In this regard, the Town argues that because the Town granted Walmart a permit to construct its Supercenter, and because this permit (according to the Town) arguably encompassed the management and direction by Walmart of stormwater, including stormwater "originating" from the Town's property and stormwater drainage collection systems, the Town is immunized from any possible liability for damages caused by that stormwater.

In support of this argument, the Town cites the case of *Hose v. Berkeley County Planning Commission,* 194 W.Va. 515, 460 S.E.2d 761 (1995). In *Hose,* the plaintiff sued (*inter alia*) the County Planning Commission, on the theory that the Commission's negligence in approving a discharge pipe on a piece of private property led to actionable and injurious water flow from that piece of property onto the plaintiff's property. We held in *Hose* that the "licensing function immunity" of *W.Va.Code,* 29–12A–5(a)(9) [1985] *supra,* barred a claim against the Town based on the Town's allegedly negligent approval of the discharge pipe.

■ In the instant case, we conclude that our ruling in *Hose* is not controlling—for two reasons. First, *Hose* was a summary judgment case, where a substantial amount of factual development had taken place—whereas in the instant case, there has been no development of the record to see what specific facts the appellants can attempt to prove to support their claim. "The plaintiff's burden in resisting a motion to dismiss is a relatively light one." *Holbrook, supra,* 196 W.Va. at 726, 474 S.E.2d at 906.

Second and more importantly, there was no claim by the plaintiffs in *Hose* that their

property was being injured as a result of negligent conduct in the maintenance and operation of property and drainage systems owned or operated and maintained by a political subdivision.

W.Va.Code, 29–12A–5(a) [1986] relates to immunity for a political subdivision for liability for injuries that are caused by the conduct of a private party who obtains a permit or license for that conduct from the political subdivision. The reason for establishing such immunity is readily understandable. In an era when much private conduct is subject to permitting or licensing by public bodies, absent some sort of "licensing" immunity that applies under ordinary circumstances, such public bodies could be made co-defendants in the majority of tort actions arising from the licensed or permitted private conduct.

But this rationale is not applicable in the instant case, especially in light of the clear provisions of W.Va.Code, 29–12A–4(c)(3) [1986] supra, which establish that a political subdivision remains accountable for injuries resulting from the wrongful management and maintenance of the subdivision's own property and water control systems and structures.[1]

Our ruling does not change existing law or in any fashion expand (or restrict) the liability of political subdivisions. For simple licensing and permitting decisions, political subdivisions remain generally immune. For improper management of a subdivision's own real property systems, the subdivision is potentially liable.[2] This is the legislatively-prescribed scheme, and our decision adheres fully to it.

It is the responsibility of our court system under our laws to protect the rights of private property owners when those rights are illegally impaired by government action, as well as when they are illegally impaired by other private property owners.

## III.

For the foregoing reasons, the decision of the circuit court to dismiss the Town of Lewisburg as a defendant is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Chief Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Chief Justice, dissenting.

(Filed June 30, 2004)

The facts of this case are simple. The Town of Lewisburg issued a permit to build a Walmart SuperCenter. The appellants now allege that, as a result of the construction of the Walmart, stormwater flows onto their property and causes damage. As the circuit court correctly recognized, the appellants have no cognizable cause of action against the Town, although it is certainly not for lack of effort on the appellants' part. The appellants' complaint against the Town has been a moving target including claims for wrongful issuance of a permit; failure to maintain storm water management facilities; strict liability; liability for changes made decades ago which now may be contributing to the appellants' problems; and breach of an affirmative duty to reconfigure the Town's storm water management facilities whenever changes are made in surrounding areas by third parties to ensure that the changes made by the third parties do not cause water originating on City property to spread to other landowners. Although these theories constitute creative pleading, they fail as viable causes of action under the facts of this case. If there is a possible recovery to be had in this case, it

---

1. We recently ruled that "inspection function" immunity, which is similar to "licensing function" immunity, does not make a nullity of the duty of political subdivisions to keep their streets, sewers, stormwater management systems, etc. free of nuisance, and to be accountable for injuries caused by improper maintenance and management of those systems. Syllabus Point 5 of Calabrese v. City of Charleston, 204 W.Va. 650, 515 S.E.2d 814 (1999) states:

W.Va.Code, 29–12A–5(a)(10) [1986] does not immunize a political subdivision from liability arising out of negligently-caused dangerous, injurious, or harmful conditions on the subdivision's own property.

2. The sole question before us is whether the plaintiff's complaint states a cause of action against the Town; it does.

should be against the defendant Walmart and not against the Town of Lewisburg. Therefore, I would affirm the circuit court's dismissal of the Town of Lewisburg from the lawsuit.

The Town correctly asserts that because any stormwater from its property and stormwater drainage systems first passes through property owned by Walmart before arriving on the appellants' property, the Town has no liability for injuries caused by that drainage. The majority opinion dismisses this argument by relying on *Whorton v. Malone*, 209 W.Va. 384, 549 S.E.2d 57 (2001). However, the principles in *Whorton* are not applicable to the instant facts. In *Whorton*, a landowner claimed immunity from stormwater drainage because the water did not originate on his property. In contrast, in the instant case, the water originated on the Town's land, but drained onto Walmart's property before reaching the appellants' land. *Whorton* would be applicable here only if Walmart claims immunity because the water originated on the Town's property rather than on Walmart's.

Concerning liability for surface water run-off, this Court held in Syllabus Point 2 of *Morris Associates, Inc. v. Priddy*, 181 W.Va. 588, 383 S.E.2d 770 (1989), in part, that,

> Generally, under the rule of reasonable use, the landowner, in dealing with surface water, is entitled to take only such steps as are reasonable, in light of all the circumstances of relative advantage to the actor and disadvantage to the *adjoining* landowners, as well as social utility.

(Emphasis added). Thus, a landowner may be liable for surface water run-off that damages the property of an adjoining landowner. However, we have never held that a party may be liable for surface water run-off that damages the property of *nonadjacent* landowners. In the instant case, the appellants are *nonadjacent* landowners to whom the Town owed no duty. This Court further has held that "[a] city is not bound to furnish drains or sewers to relieve a lot of its surface water, whether its own or that flowing from other premises." Syllabus Point 1, *Jordan v. City of Benwood*, 42 W.Va. 312, 26 S.E. 266 (1896), *overruled on other grounds by Mor-*

*ris, supra. See also Carter v. Monsanto Co.*, 212 W.Va. 732, 736, 575 S.E.2d 342, 346 ("Neither West Virginia common law nor West Virginia statutory law presently supports or recognizes a claim for property monitoring.").

In addition, we have never recognized a duty to intervene and preemptively alleviate water problems caused by a third party's development of its property. According to the appellants, prior to the construction of the Walmart SuperCenter, the bulk of the stormwater from the Town's property did not reach the appellants' property. Since the construction of Walmart, however, the stormwater drainage now flows across Walmart's property and onto the appellants' property. This clearly indicates that it is not the Town's actions, but rather the actions of Walmart that have caused the appellants' alleged injury.

It is undisputed that the only act which the Town undertook is the permitting and zoning of Walmart and other commercial development. As a matter of law, acts associated with a political subdivision's permitting, zoning, licensing, and inspection functions are acts afforded express immunity under W.Va. Code § 29–12A–5(a)(9) (1986) which states:

> A political subdivision is immune from liability if a loss or claim results from: . . . (9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority[.]

This Court addressed the immunity of political subdivisions in the case of *Hose v. Berkeley County Planning Com'n*, 194 W.Va. 515, 460 S.E.2d 761 (1995). In *Hose*, a landowner attempted to impose liability on a developer for changing the flow of surface water which resulted in flooding of the landowner's property. We found that the County Planning Commission and the County Engineer were immune under W.Va.Code § 29–12A–5(a)(9), and we held in Syllabus Point 5:

> *W.Va.Code*, 29–12A–5(a)(9) [1986] clearly contemplates immunity for political subdivisions from tort liability for any loss or claim resulting from licensing powers or functions such as the issuance, denial, sus-

pension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval order or similar authority, regardless of the existence of a special duty relationship.

The majority's contention that *Hose* is not controlling rests on two unduly restrictive conclusions: (1) *Hose* was a summary judgement case, where a substantial amount of factual development had taken place, whereas in the instant case, there has not been development of the record to see what specific facts the appellants can attempt to prove to support their claim; and (2) there was no claim by the plaintiffs in *Hose* that their property was being injured as a result of negligent conduct in the maintenance and operation of property and drainage systems owned and maintained by a political subdivision. With regard to the first argument, the majority misapplies the applicable rule of law. This court has said that in cases of an immunity defense, a heightened pleading is required and early resolution by summary disposition is encouraged:

> We agree with the United States Supreme Court to the extent it has encouraged, if not mandated, that claims of immunities, where ripe for disposition, should be summarily decided before trial. Public officials and local government units should be entitled to qualified immunity from suit under § 1983, or statutory immunity under W. Va.Code, 29–12A–5(a), unless it is shown by specific allegations that the immunity does not apply.

*Hutchison v. City of Huntington,* 198 W.Va. 139, 147–48, 479 S.E.2d 649, 657–58 (1996) (footnote and citation omitted). In the instant case, the appellants were given three chances to state facts sufficiently specific to support a claim against the Town of Lewisburg; however, the allegations of all the appellants' complaints fail to meet the heightened pleading requirement afforded a municipality when an immunity defense exists. The Town's conduct falls squarely within the immunity defense.

Finally, the appellants admit that the alleged changes made by the Town caused them no damage or injury for almost twenty years and that the only "changes" which

allegedly caused the appellants' problems were undertaken by third parties. In addition, the appellants allege no facts to support a claim of continuing tortious conduct such that the two-year statute of limitations would be tolled from the date the Town issued permits for the construction of Walmart. Accordingly, I believe that the two-year statute of limitations in W.Va.Code § 29–12A–6(a) (1986), which applies to claims against a political subdivision for damages or loss to persons or property caused by any act or omission in connection with a governmental or proprietary function, bars the appellants' claims against the Town.

In sum, the appellants' allegations in all three separate complaints fail to establish a cognizable claim against the Town of Lewisburg, and the circuit court properly dismissed the Town from the appellants' lawsuit. Therefore, I would have affirmed the circuit court.